# Kyle and Dunlap's Appeal.

*Exemption Law.—Proviso as in favour of purchase-money, not applicable against lien-creditors.—Effect of waiver by debtor.*

1. The proviso of the Exemption Act of 9th April 1849, that it shall not affect liens for the purchase-money of real estate, applies against the claims of insolvent debtors only, and not against their judgment-creditors.

2. Where the proceeds of a debtor's real estate were claimed on distribution by judgment-creditors whose liens were entered on the same day, by the holder of a subsequent judgment for purchase-money, and by the defendant for his exemption, who had withdrawn his claim, it was *Held*, That there being no claim for exemption at the time of distribution and the record determining the priority of liens, the prior judgment-creditors were entitled to the fund, to be divided *pro rata* between them.

3. The claim for exemption being a personal privilege, the defendant has the right to withdraw it, though the result be to prefer his prior judgment-creditors over the holder of the judgment for purchase-money.

APPEAL from the Common Pleas of *Cumberland county.*

This was an appeal by James Kyle and Catharine Dunlap, from the decree of the Common Pleas, distributing the proceeds of the sale of the real estate of Christian Heller, in which the following case was stated for the opinion of the court:—

The real estate of Christian Heller was sold on the following *fi. fas.*, by his written consent and agreement. William Clark *v.* C. Heller, *fi. fa.* No. 46, August Term 1862, issued on judgment No. 148, April Term 1860; James Clark *v.* C. Heller, *fi. fa* No. 47, August Term 1862, issued on judgment No. 276, August Term 1860.

Real estate of defendant sold on the 22d day of August 1862, on the above *fi. fas.*, by the following agreement of defendant:

"William Clark *v.* Christian Heller, *fi. fa.* No. 46, August Term 1862, in the Common Pleas of Cumberland county.

"Whereas, the tract of land I now own in Penn township, Cumberland county, bounded by lands of William H. Miller,

9 WR.—23

Philip Campher and others, and containing about seventy-one or two acres, more or less, can, in my opinion, be divided into three parts, so that if sold separately in three parts, as hereinafter described, it will, in my opinion, bring a greater amount of money than if sold as one entire tract. And as the sheriff of Cumberland county is about levying on said land, on the above *fi. fa.* in favour of William Clark, and I am anxious to make said land bring the greatest amount of money: Now, I do hereby authorize and request J. Thompson Rippey, the sheriff of said county, to make his levy on said executions on said land, in three separate tracts, and I hereby return him my real estate in three separate tracts, and request him to levy on it as follows, to wit: (Here follows a description of the land.)

" And I hereby dispense with and waive an inquisition on said land, and each of said tracts, and consider the same as condemned, and I also authorize the sheriff to sell said land in fee simple in the three tracts above described, on *fi. fa.* No. 46, August Term 1862, which he now holds in his hands, and without any other process. It is understood, however, that this is done with the condition that the judgment-creditors will allow me the same claim under the Exemption Laws of Pennsylvania that I would have had, if I had made my claim before levy, and had not consented to the division of the property, or to its being sold on this *fi. fa.* In other words, if I could claim the benefits of the law commonly known as the $300 law, in any aspect, either by having part of the property valued and set apart to me, or by taking money out of the sale. If the appraisers had returned that the property could not be divided, then the right of taking money out of the proceeds of the sheriff's sale is accorded to me, to whatever amount I would have been entitled to under adverse proceedings. The object being here to save costs and trouble, and to make the property bring as great an amount of money as possible, but not to give up any of my rights under the existing Exemption Laws.

" Witness my hand and seal this 26th day of June 1862.

                    " CHRISTIAN HELLER. [L. S.]
" Witness:  C. E. MAGLAUGHLIN."

A similar agreement was given to the sheriff on the execution of James Kyle.

The sale produced $510. The balance of the purchase-money, after paying the three judgments of William Clark, amounting to $141.88, being brought into court for appropriation, these facts are agreed upon as a case stated, and on these facts the court is to appropriate the fund according to law, either party having the right to appeal. The claimants are James Kyle, Catharine Dunlap, and Daniel Messinger, by virtue of their judgments; Christian Heller, under the claim of $300, under

the Act of Assembly, and Anthony Clever, on his judgment, as assignee of William Clark.

Christian Heller, the defendant in the executions, owned a tract of land in Penn township, which he purchased from William Clark on the 17th of April 1860. The deed was made, and possession given to Heller on the 17th of April 1860, and the three following judgments were given by Heller to Clark, in part of the purchase-money, and entered of record on the same day, to wit:

William Clark v. C. Heller.—No. 148, April Term 1860. Entered 17th April 1860. Judgment $100. Interest from 1st April 1860, due 1st April 1861.

Same v. Same.—No. 149, April Term 1860. Entered 17th April 1860. Judgment $100. Interest from 1st April 1860, due 1st April 1862.

Same v. Same.—No. 150, April Term 1860. Entered 17th April 1860. Judgment $100. Interest from 1st April 1860, due 1st April 1863.

James Kyle and Catharine Dunlap obtained judgments against Christian Heller, by amicable *sci. fa.* on judgments which they formerly held against Heller, to wit:

James Kyle v. C. Heller, with notice to William Clark, terre-tenant.—No. 276, August Term 1860. Amicable *sci. fa.* entered 27th October 1860. Judgment $218. Interest from 1st October 1860.

Catharine Dunlap v. Same defendant, with notice to same terre-tenant.—No. 277, August Term 1860. Entered 27th October 1860. $168. Interest from 1st October 1860.

After this, Daniel Messinger obtained a judgment against defendant, by entering a transcript from a justice of the peace, to wit:

Daniel Messinger v. Christian Heller.—No. 138, August Term 1861. Entered 18th September 1861. $21. Costs $19.62. Interest from 13th July 1861.

The next judgment entered was

William Clark, for use of Anthony Clever, v. Same.—No. 254, January Term 1862. Entered 29th March 1862. $100. Interest from 1st April 1860. This judgment was given for purchase-money to William Clark, and afterwards assigned, in some business transaction, to Anthony Clever.

The next judgment was

C. E. Maglaughlin, for use of Elizabeth Heller, v. Same.— No. 342, January Term 1862. Entered 4th April 1862. $175. Interest from 4th April 1862.

On the 29th day of May 1862, writs of *fieri facias* were issued at the same time on one of the judgments of William Clark which was due, and on the judgments of James Kyle. These

writs are stated in the first part of this statement. As the defendant had no personal property, his real estate was levied on. He entered into an agreement with the execution-creditors, &c., that his real estate should be sold on the *fi. fas.*, reserving to himself the right to get $300 out of the proceeds of the sale, if in any event he would have been entitled to claim the same. These agreements are made part of this case stated. The property was sold by the sheriff for the sum of $510. After paying the three judgments of William Clark, which were the first liens, there is a balance left of $141.88, now in court for appropriation. The question is, whether, under all these facts, James Kyle and Catharine Dunlap are entitled to it, or Daniel Messinger, or Christian Heller, or Anthony Clever.

The court below (GRAHAM, P. J.) delivered the following opinion :—

"In the matter of the appropriation of the money arising out of the sale of the real estate of Christian Heller, sold by the sheriff of Cumberland county.

"In this case the money was brought into court for appropriation, upon petition of the defendant, C. Heller, who claimed a part of the money arising from the sale by the sheriff, under the Exemption Act of 1849.

"The real estate sold by agreement and direction of the defendant and his judgment-creditors, was levied in three separate parts, and sold upon two *fi. fas.*, one in favour of William Clark, and the other in favour of James Kyle. The same agreement stipulated that defendant was not to be prejudiced in his claim under the Exemption Act, but if under any circumstances he was entitled to retain $300, or any part thereof, under the act, he should claim the same out of the proceeds of sale, with the same effect as if an appraisement had been made by the sheriff. Under this agreement a levy was made on both *fi. fas.*, and a sale returned on each.

"The *fi. fa.* in favour of Clark was upon a judgment for purchase-money, but upon Kyle's judgment the defendant is entitled to the benefit of the Exemption Act. The sale amounted to $510. The three first judgments, including the one on which a *fi. fa.* issued, were in favour of Clark for purchase-money, and have been paid by consent, leaving a balance of $147.70, the fund in dispute, which has been brought into court for appropriation. It was claimed by the defendant, Heller, by James Kyle and Catharine Dunlap, *pro rata*, their judgments being entered on the same day, to wit, 27th October 1860, and Anthony Clever, assignee of William Clark, claims on a judgment entered 29th March 1862. This judgment is entered on one of the bonds given to William Clark for purchase-money, and

assigned by Clark to Clever, on which judgment was entered after the judgments of Kyle and Dunlap.

" Kyle and Dunlap claim the balance, first, because there is a subsequent judgment for part of the purchase-money against which defendant cannot claim exemption, and assimilating this to be the case of a waiver of exemption by defendant, on the principle ruled in Shelly's Appeal, 12 Casey 373, that a waiver on a subsequent judgment lets in the prior judgments on which there is no waiver according to their priority of lien, it is contended that the judgment of Clark for use of Clever, against which defendant cannot claim exemption, lets in the prior judgments of Kyle and Dunlap, upon the fund in controversy. Again, it was argued that the property was sold on the judgment of Clark for purchase-money, against which the defendant could not claim exemption or demand an appraisement, and that consequently all claim by defendant under the Exemption Act is unavailing.

" The first position is not sound, for under the ruling of our Supreme Court there is a distinction taken between a voluntary waiver by defendant, and cases excluded from the operation of the Act of 1849, by its terms, or the nature of the writ upon which the sale is made, when it precludes a separation or division of the property. Thus upon a mortgage defendant may claim against subsequent judgments, without demanding an appraisement and division of the property, because such demand would be nugatory, and disregarded by the sheriff on a writ of *levari facias*: Hill *v.* Johnston, 5 Casey 362. In McAfoose's Appeal, 8 Casey 277, a judgment for a debt contracted prior to the Act of 1849, where defendant claimed the benefit of that act, was awarded the proceeds of sale against a senior judgment for a debt contracted after the passage of the Exemption Law. The reason why a debtor may not waive his right so as to give a junior judgment a preference to a prior lien, is that he cannot be permitted to interpose and discriminate between different creditors. If he preserves the position in which the law places him, he is entitled to its benefits. If he attempts to place another in the situation intended only for his benefit, and that of his family, it is a perversion of the legislative intent which will not be tolerated, and the law appropriates, regardless of the debtor's partiality or dictation. But this reasoning will not apply where some of the liens are excluded from the operation of the act, without the action of the debtor himself, nor has the principle been applied to such cases in the decisions we have cited.

" In reply to the position that the real estate was levied and sold on Clark's judgment for purchase-money, on which defendant could not claim under the Act of 1849, it may be answered that it was also sold on Kyle's judgment, against which defendant could claim exemption, for there was a levy and sale returned

on both writs. The land was sold in three parts, by agreement, reserving to defendant all his rights which he might have under any circumstances under the Act of 1849. Purparts 2 and 3 sold for $360, a sum sufficient to pay the three judgments of Clark for purchase-money. These amounted to $359.71, including all costs, as appears by the appropriation returned by the sheriff, so that purpart No. 1, which sold for $150, could only have been sold on the execution of Kyle, by virtue of the agreement to sell the whole, reserving to defendant his right to claim out of the sale $300, or any part thereof. And that. he has a right to claim against the judgment of Kyle, cannot be gainsayed unless the execution of Clark, being in the sheriff's hands and levied at the same time, deprives the defendant of his right to claim exemption against Kyle. But Clark's writ ought not to produce this effect, when sufficient property was levied and sold to pay Clark's judgments, independent of purpart No. 1, which produced a sum equal to that claimed by defendant. The claim of defendant must therefore prevail against the judgments of Kyle and Dunlap. But the subsequent judgment of Clark for use of Clever, being entered on a bond for purchase-money, must be paid out of the sheriff's sale. The proviso to the 3d section of the Act of 1849, is very explicit ' that this section shall not be'construed to affect or impair this lien of bonds, mortgages, and other contracts for the purchase-money of the real estate of insolvent debtors.' This prevents Heller, the defendant, from taking the fund in controversy until the judgment of Clark for use of Clever is first paid, it being for purchase-money, and protected by the proviso of the 3d section of the Act of 1849. After payment of the judgment of Clark for use of Clever, there would be a balance of about $28, which would be payable to Heller, the defendant, if his claim had not been withdrawn by his counsel. But after making claim under the Act of 1849, having the money, on his petition, ruled into court for appropriation, signing an agreement by his counsel, in connection with the counsel of Kyle, Dunlap, and Clever, submitting the facts upon which the appropriation was to be made, and appearing before the court, and arguing the claim of defendant against the judgment of Clark for use of Clever; after the argument of the respective counsel was concluded, and an intimation given by the court that the defendant could not take the fund against the judgment for purchase-money, although it was subsequent to the judgments of Kyle and Dunlap, the defendant's counsel then withdrew the claim of his client under the Exemption Act.

" It is difficult to conceive the object in withdrawing defendant's claim from the consideration of the court, after an intimation that he would receive the balance after payment of the judgment of Clark for use of Clever, unless it was to give the

[Kyle and Dunlap's Appeal.]

fund to Kyle and Dunlap, and prevent the payment of the subsequent judgment for use of Clever. This would have been the proper appropriation, had no claim been made by defendant under the Act of 1849. The judgment-creditors would then have been paid according to their priority of lien. And the question is now presented, whether a defendant, after making claim, and prosecuting it until he has the opinion of the court, although not reduced to writing, that only a small part of it could be allowed, can then withdraw it so as to affect other creditors, and change the entire appropriation. This, we think, cannot be sanctioned. The claim for exemption by defendant fixes the *status* of the other creditors. If he prefers his claim, and has not waived his right to do so in favour of any creditor, he is protected by the Exemption Act, except as to liens which are excluded from its provisions. If he declines to make claim, the law appropriates according to priority of lien, without reference to the Act of 1849. But the debtor cannot assign, transfer, or substitute another to his rights; and upon the same principle, he cannot in this case, after being disappointed in his expectations, through caprice or partiality, defeat one creditor and give it to another, by withdrawing his claim. We must appropriate the fund in court upon the facts as they existed when the money was ruled into court, and the case argued by counsel, and to permit a debtor, after he has discovered he can receive but a small part of his claim under the Exemption Act, to defeat a creditor who has defeated him, and require the court to appropriate as if his claim had not been made, might occasion collision between the debtor and senior lien-creditors, who would be interested in inducing the claim of exemption to be withdrawn, so as to secure the money to be appropriated, which would have been awarded to another not affected by the Act of 1849, had the debtor persisted in his claim.

" The judgment of Clark for use of Clever, being for purchase-money, must be first paid out of the money in court, and the residue would have been payable to Heller, the defendant, had his claim not been withdrawn by his counsel. But the defendant, as the case now stands, having withdrawn his claim, we direct the balance after the payment of the judgment of Clark for use of Clever, to be paid *pro rata* to the judgments of James Kyle and Catharine Dunlap, these judgments being entered on the same day, and the first liens on the property sold, except the judgments of William Clark for purchase-money, which have been paid." Which decree was assigned for error.

*Watts & Parker* (with whom was *W. H. Miller*), for appellants.

*John Williamson*, for appellee.

The opinion of the court was delivered, May 21st 1863, by

WOODWARD, J.—We adopt the reasoning of the court below, except as to the effect of Heller's release of his right of exemption, and that we may get that point before us in the same manner it presented itself to the mind of the learned judge, we assume that Cook's execution was satisfied by the sale of purparts No. 2 and 3, and that the proceeds of No. 1, now in court for distribution, are unaffected by Clark's writ. According to the record of the remaining judgments, the money would go to Kyle and Dunlap, whose judgments were entered on the same day, and not to Clark for the use of Clever, because this judgment was subsequent to those of Kyle and Dunlap, and although entered on a purchase-money bond, became a lien only from its entry, the legal title having vested in the purchaser.

As against Kyle and Dunlap, Heller was entitled to his exemption, and having claimed it down to the time of distribution, he then released it. The learned judge considered his conduct so unreasonable that he would not give Kyle and Dunlap the benefit of the release, but insisted on treating Heller as still claiming his exemption. Such a claim could not avail against Clever because he was assignee of Clark of one of the purchase-money bonds, and his judgment was on that bond. The consequence of discharging Heller's release was to give the fund to Clever, though the latest creditor on the record.

A debtor is offered an exemption of $300 by the Act of 1849, if he claims it in due time. But because it is a personal right he may waive it. He is not compelled to accept the bounty of the statute. He is not permitted to assign it, but it is impossible to say that he may not release it, and that at any time before the money is actually in his pocket. Heller's conduct was capricious and unreasonable, beyond doubt, but the positive release of a personal right, even by a capricious and unreasonable man, cannot be judicially set aside. And where a debtor fails to claim his exemption, or having claimed it afterwards releases it, he stands as if there were no exemption statute. As to him it is a dead letter, and of course the proviso of the 3d section dies with the section. That proviso saves purchase-money securities from the effect of the debtor's claim of exemption, not from the effect of prior liens of record. If there is no claim of exemption at the time of distribution, the record determines priority of lien, and the proviso in the exemption law is inoperative. Provisoes are designed to save something out of the enacting clause, and when the enacting clause is repealed or displaced, its proviso goes with it.

The mistake of the learned judge consisted in applying the proviso against judgment-*creditors*, whereas its only legitimate operation is against insolvent judgment-*debtors*. If they claim

$300, they shall not have it against purchase-money liens; but if they do not claim, purchase-money liens, like all others, must rank according to their date of record.

The effect of non-claim in this case is to give the money a different direction from that it would have had, if Heller had persisted in his claim, but that cannot be helped. Whilst he cannot claim his exemption against one creditor and disclaim it in favour of another, and thus virtually assign the legislative bounty to his favourite creditor, he can renounce it altogether, and it is no answer to such a complete and unconditional renunciation, that its legal effect is to disappoint a subsequent judgment-creditor, and give the money to those who are prior. If the law gives him the right of election, the law must accept the consequences of his exercise of it.

These views are not inconsistent with rulings in prior cases, and they lead to a reversal of the judgment below.

And now, to wit, May 21st 1863, this cause having been argued and fully considered, it is ordered and decreed that the decree of the Court of Common Pleas of Cumberland county be reversed and set aside, and that the fund for distribution be paid to James Kyle and Catherine Dunlap, *pro rata*, according to their respective judgments against Christian Heller, and that the appellee pay the costs.