that a readiness to perform on that date was within the time specified by the contract. The testimony was that the ordinary and usual time required to establish at that time in New York a credit from Stockholm or Copenhagen was anywhere from five to eight days and that testimony was produced by the plaintiff. Plaintiff did not establish its credit within the maximum time so testified to, and there is no explanation for the delay. No evidence was offered by the plaintiff to show when the cablegram sent by plaintiff's agent, Lund, was actually received at its Stockholm office. No testimony whatever was produced to show when the first or subsequent steps looking to the establishment of the required credit in New York were taken in Stockholm or Copenhagen by the plaintiff, or what those steps were.

There is, therefore, no evidence to show that the plaintiff established the credit, or stood ready to establish it without undue delay, and with as much celerity, promptitude, and dispatch as was permitted under the circumstances. Consequently I am constrained, though with reluctance, to set aside the verdict and award a new trial.

---

### In re CROSS.

(District Court, M. D. Pennsylvania. May 15, 1922.)

#### No. 4135.

Bankruptcy ☞399(2)—Waiver of exemptions not available to levying creditor.
    Statutory exemptions are for the benefit of the debtor, and may be waived by him, and, on withdrawal by a bankrupt of the claim to exemptions made in his schedules, the property will not be set apart in favor of a levying creditor who holds a waiver of exemptions.

In Bankruptcy. In the matter of Wilfred M. Cross, bankrupt. On withdrawal of claim for exemption by bankrupt and rule by Tinkler & Co., Inc., a creditor, on John R. Hessel, trustee, to set aside exemptions. Rule discharged.

S. M. R. O'Hara, of Wilkes-Barre, Pa., for trustee.
Jenkins & Turner, of Wilkes-Barre, Pa., for the rule.

WITMER, District Judge. At the time the petition in bankruptcy was filed, the goods of the bankrupt were under levy upon execution of Tinkler & Co., Inc., in which there was waiver of the exemption. The bankrupt claimed certain specified goods under the exemption in his schedules filed, but shortly thereafter, upon the election of a trustee, the bankrupt filed a disclaimer to the exemption of the property enumerated in his schedules, and requested that amendment be noted accordingly. Tinkler & Co., Inc., the execution creditors, resist the amendment of the schedules and insist that they be permitted to have the property claimed set aside for the bankrupt that they might to this extent proceed with their levy and execution.

Bearing in mind that the benefits of the exemption were intended

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

for the relief of the unfortunate debtor, and not as a medium to aid the pursuing creditor, suggests the answer to the proposition presented. It has been frequently stated that the right to the exemption is a personal privilege of the debtor and one over which he himself has absolute control. He may or not claim it at his option. If claimed, he may release it, or lose it, before property is set off, or money decreed to him, in compliance with the statutory provisions. Kyle & Dunlap's Appeal, 45 Pa. 353; Overseer's Appeal, 95 Pa. 191; Sutman v. Hogsett, 70 Pa. Super. Ct. 180; In re Jonas Baughman (D. C.) 25 Am. Bankr. Rep. 167, 183 Fed. 668.

In any aspect of the situation, until the specific property has been set off under the exemption, the court has full authority to consider and dispose of whatever is involved, and since it is against no policy of the law to permit the withdrawal of the bankrupt's claim, for it results in no advantage to the bankrupt over the creditors, rather working equity among his creditors within the spirit of the bankruptcy law, the withdrawal is affirmed, and the schedule is amended accordingly.

The rule of Tinkler & Co., Inc., on the trustee, to set aside the exemption, is discharged.

---

### In re GARY et al.

(District Court, S. D. Texas, at Victoria.)

No. 126.

1. **Fraudulent conveyances ☞47—Texas Bulk Sales Act does not prohibit transfers of fixtures alone.**

   The Texas Bulk Sales Act,[1] prohibiting a sale or transfer in bulk of a stock of merchandise or merchandise and fixtures, except under conditions therein named, does not prohibit the transfer of the fixtures of a store apart from the stock of merchandise.

2. **Fraudulent conveyances ☞47—Texas Bulk Sales Act does not apply to mortgages.**

   The Texas Bulk Sales Act,[1] prohibiting sale or transfer of merchandise and fixtures in bulk, except under specified conditions, including a notice to all creditors of intended transfer, does not apply to a transfer by chattel mortgage, which was already covered by Rev. St. Tex. art. 3970.

3. **Statutes ☞181(1)—Supposed intention of Legislature is not safe guide for construction.**

   The supposed intention of the Legislature in enacting a statute is not a safe guide to construction, and a decision should not be based thereon until all other guides have failed.

4. **Statutes ☞214—Definition in Bankruptcy Act of "sale and transfer" does not apply to term used in state statute seeking to prevent bulk sales.**

   The definition in the Bankruptcy Act (Comp. St. §§ 9585–9656) of "sale and transfer," as used therein, does not govern, in bankruptcy proceedings, the construction to be placed on those words as used in state statute seeking to prevent bulk sales.

5. **Courts ☞366(1)—Construction of state statute by Texas Court of Civil Appeals, and not by Supreme Court, is not controlling on federal court.**

   The construction given to a statute by the highest court of the state becomes part of the statute, and must be given effect by federal courts when applying that same statute; but where a Texas statute has been

---

[1] Vernon's Ann. Civ. St. Supp. 1918, arts. 3971–3973.