# Appeal of the Overseers of the Poor of White Deer Township.

The claim of $300 exemption, under the Act of 1849, is a personal privilege and may be withdrawn at any time by the claimant. He is not precluded from withdrawing his claim because he is a pauper and a charge upon a township.

June 15th 1880.  Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

Appeal from the Court of Common Pleas of *Union county:* Of May Term 1880, No. 206.

Appeal of the Overseers of the Poor of White Deer township from the decree of the court confirming the report of the auditor appointed to distribute the proceeds of the sale of the real estate of Gabriel Huntingdon, a pauper.

The facts found by the auditor, S. D. McDonald, Esq., were substantially as follows: The fund for distribution was the proceeds of the real estate of Huntingdon, sold on the 8th of August 1879. At that time there were on the records of the Court of Common Pleas of Union county six judgments, which were a lien on this real estate. All these judgments were without any waiver of exemption. A fieri facias issued on the judgment of Philip Stahl, which execution was received by the sheriff on April 18th 1879.

The defendant had no personal property, and on the 1st of May 1879 the sheriff levied on defendant's real estate. He claimed $300 exemption, and on the 13th of May 1879 the sheriff summoned three men to appraise the real estate. On the same day the said appraisers found that it could not be divided. On May 19th 1879 defendant again claimed $300 out of the proceeds of the sale of the real estate, under Act 9th April 1849. On May 19th 1879 defendant's real estate was condemned. A venditioni exponas issued, and the real estate was sold on the 8th of August 1879. On return of the vend. ex. the sheriff, by leave, paid the money into court. At the return of the writ, September 22d 1879, a paper was filed withdrawing the claim for exemption in the following words:

"I, Gabriel Huntingdon, defendant in this case, do hereby withdraw my claim for exemption under the Act of 9th April 1849, and agree that the sheriff pay out the said money as if no such claim had been made.

"Signed in the presence of ⎫
  "JOHN CRISWELL,       ⎬      GABRIEL HUNTINGDON
  "J. MERRILL LINN.      ⎭

The auditor found that there was no consideration given for said

release of exemption, save the pre-existing debts in the form of the judgments.  He also found that on the 17th of April 1879 Huntingdon applied to two justices for an order of relief for himself and wife, on the ground that they were poor and unable to provide for themselves, and on said day, an order of relief was granted, which order was directed to the Overseers of the Poor for the district of White Deer township, Union county, Pa.; that under said order the overseers took charge of Huntingdon, and he has from that time remained as a charge upon the township as a pauper.

The auditor reported: "Did the $300 exemption vest in Gabriel Huntingdon when he made his claim on the 19th day of May 1879?  If it vested in him, did it *eo instanti* vest in the Overseers of White Deer township?  Or did he still have such dominion and control over the fund or over his claim as would enable him to withdraw his claim to exemption and allow the fund to be distributed as though no such claim had been made?

"It is admitted by the counsel for the overseers that if the defendant had failed to make the claim the fund would have gone to the judgment-creditors, but it is maintained that when he made the claim an interest vested in the overseers of which he could not afterwards divest them.

"The thirty-third section of the Act 13th June 1836 provides as follows:

"'It shall be lawful for the directors of the poor of any county, and for the overseers of any district, as the case may be, in which any person shall have become chargeable, to sue for and recover any real or personal estate belonging to such person, and to sell or otherwise dispose of the personal property, and to collect and receive the rents and profits of the real estate, and to apply the proceeds, or so much thereof as may be necessary, to defray the expenses incurred in the support and funeral of such person; and if any balance shall remain the same shall be paid over to the legal representatives of such person after his death, upon demand made and security being given to indemnify such directors or overseers from the claims of all other persons.'

"This act is taken from the Act of 29th March 1819, with some alterations suggested for the purpose of defining more clearly the authority of overseers in the subject-matter: 4 Report of the Commrs. to revise the Civil Code, p. 89.

"It does not appear that prior to the Act of 29th March 1819, there was any means by which the overseers could apply the property of a pauper to his support except by withholding relief.

"The Act of 13th June 1836, sect. 33, is a remedial statute, made to supply a defect in the common law.  The object of the act was clearly to give the overseers a right which they did not have

[Appeal of the Overseers of the Poor of White Deer Twp.]

before, not to deprive the pauper of any right which he already had. The old law was defective. The mischief was, that a pauper receiving support might still retain his goods and chattels or neglect to enforce rights in action which might be made available for his support. And the remedy was to give the overseers the right to confiscate the property which he already had in possession, and to use legal remedies for the recovery of his rights in action.

"The Act of 13th June 1836 does not deprive the pauper of all control over his property. It was not made for this purpose. It merely gives the overseers the right 'to sue for and recover any real or personal estate belonging to such person, and to sell or otherwise dispose of the personal property.' If they neglect to do this or to take possession of his property, it cannot be denied that the property and the right of action remain in the pauper.

"No man is to be stripped of his inherent rights without special words to that effect.

"So long as the property remains in the possession of the pauper, unappropriated by the overseers, it would be absurd to say that he could not in good faith apply it to the discharge of bona fide debts by the contraction of which he had been enabled to keep himself without assistance from the overseers. It is clear, then, that the Act of 13th June 1836 does not divest the pauper of all rights in or to his property. It merely gives the overseers of the poor an authority over his property which, when exercised, is superior to his.

"Applying these principles to the case in hand, it is clear that the Act of 13th June 1836 did not divest Gabriel Huntingdon of all his rights in the proceeds of the sale of his real estate and vest them in the overseers of the poor. If this were the case, then the defendant was incapable of making the claim for exemption, and if he was incapable of making the claim, then the fund would go to the judgment-creditors.

"If he was capable of making the claim he was also capable of withdrawing the claim, which he did, and the fund is to be distributed as though no claim had been made: Kyle and Dunlap's Appeal, 9 Wright 353. The right to exemption is a personal privilege of the defendant, and over which he himself has absolute control: Kyle and Dunlap's Appeal, *supra*.

"It is also clear that no property in the $300 ever vested in Gabriel Huntingdon, and therefore it could not vest in the Overseers of White Deer township. By his claim for exemption he merely obtained an inchoate right or chose in action liable to be rejected by the sheriff, or defeated or released before actual possession was obtained. This was what actually took place. Gabriel Huntingdon released or withdrew his claim to exemption. This he had a right to do: Kyle and Dunlap's Appeal, *supra*. And it is to be remembered that he did not do this in bad faith, but in favor

14 Norris—13

[Appeal of the Overseers of the Poor of White Deer Twp.]

of bona fide judgment-creditors, whose advancements to him had been his means of sustenance, and whose leniency had saved him from becoming a charge on the township long before.   Their claim to his property was at least as equitable as that of the overseers of the poor, and their legal status is certainly superior.

"The auditor is therefore of the opinion that the claims of the overseers of the Poor of White Deer township to $300 out of the fund for distribution ought not to be allowed, but that the said fund should be distributed among the judgment-creditors in the order of their priority."

The township excepted, and the court overruled the exceptions and confirmed the report, adopting the opinion of the auditor. From this decree this appeal was taken.

*Wolfe & Wilson*, for appellants.—The real estate of Huntingdon being converted into personalty by the sheriff's sale, the $300 of the proceeds vested in the overseers upon the election of Huntingdon, who was then a charge on the township, to retain the sum out of the proceeds, and said property being so vested Huntingdon could not deprive the township thereof by withdrawing his claim for exemption.   The withdrawal was voluntary and in fraud of the rights of the township.   Whatever rights Huntingdon had passed irrevocably to the township.   Whatever property a man has when he becomes a pauper passes *ipso facto* to the overseers: Act of June 13th 1836, sect. 33, Purd. Dig. 1160, pl. 39.   If Huntingdon had failed to claim the benefit of the exemption then it would have gone to his creditors; but having claimed it, it vested in him, and that moment became the property of the overseers: Jester *v.* Overseers of Jefferson Twp., 1 Jones 540 ; Ripple et al. *v.* Ripple et al., 1 Rawle 386.

*J. Merrill Linn*, for appellees.—The $300 never vested in Huntingdon, and could not until paid to him.   The claim of the exemption, even if it did vest the property in him, would not *ipso facto* give the overseers any right to it.   Even if vested in him, property exempted could not be claimed by the overseers, although he was then a charge and received support.   The overseers have no other nor better rights than any other creditor.   It was not in fraud of their rights he withdrew his claim to exemption, as he used it to pay his pre-existing debts.   A pauper can claim the benefit of the exemption, even against the overseers of the poor, and can claim or release his claim to exemption at his own pleasure : Kyle and Dunlap's Appeal, 9 Wright 353.   The debtor has no vested right in the property itself before appropriation or distribution, or it is reduced to possession.   And he has a right to waive it up to that time notwithstanding it will make a change in the distribution.

[Appeal of the Overseers of the Poor of White Deer Twp.]

Mr. Justice MERCUR delivered the opinion of the court, October 4th 1880.

This contention is for a fund produced by a sheriff's sale of the real estate of one Gabriel Huntingdon. It arises between his lien creditors and the overseers of the poor. It presents a question of the power of Huntingdon, after he had become a charge on the poor district, to make and to withdraw, a claim for the $300 worth of property under the Act of April 9th 1849.

After the judgments on which the money is claimed had attached as liens to the land, and after a fi. fa. had issued on one of them, but before the return day thereof, Huntingdon applied for relief. An order therefor was duly granted. Under this order the overseers took charge of Huntingdon, and have continued to provide for him. Several days thereafter the fi. fa. was levied on the land. About a month after the order of relief was procured, Huntingdon made claim to the $300 exemption. The appraisers found that the land could not be divided without spoiling the whole, and Huntingdon then claimed the $300 out of the proceeds of sale. The land was sold on a writ of vend. ex. Afterwards by writing duly executed by Huntingdon, he withdrew his claim for exemption, and agreed "that the sheriff pay out the said money as if no such claim had been made." This writing was returned with the writ on the return day thereof. The sheriff thereupon asked leave to pay the money into court, and it was so paid.

The Act of 1849, allowing the exemption, does not force it on a debtor. He may or may not claim it at his option. It is a personal privilege which he may release. It is a contingent right which is lost by an omission to claim it at the proper time. In case he does duly claim it, he may withdraw the claim at any time before the property is set off or money decreed to him : Kyle and Dunlap's Appeal, 9 Wright 333. Conceding this power to exist in one who is *sui juris*, it is contended that Huntingdon could not withdraw the claim. The Act of June 13th 1836, authorizes the overseers of the district in which a person has become chargeable, to sue for and recover any real or personal estate belonging to him, and to collect and receive the profits of his real estate, and to sell and dispose of his personal property. It does not, however, divest nor impair any liens on his property existing before he became chargeable on the district. When Huntingdon became chargeable he had no right of property. He had not taken the first step towards acquiring it. He never did acquire it. He was under no more disability at the time he withdrew the claim than when he made it. He did not make it in behalf of the overseers but in his own right. He could not have been compelled to claim it to the prejudice of his lien creditors, either for the benefit of himself or his other creditors. Before any order or decree giving him the money was made, and before his claim was considered and deter-

mined, he withdrew it.   He was as competent to withdraw the claim as he was to make it.   The withdrawal was no fraud on any of his creditors.   It was not in *conflict* with any principle of equity, nor with the policy of the law.   No fact is shown tending to put the appellants on higher ground than that occupied by the judgment lien creditors.   The learned judge was right in decreeing the money to the latter.

Decree affirmed, and appeal dismissed at the costs of the appellants.