331 A.2d 452
**Robert D. MAYHUGH et al.**

**v.**

**Eugene L. COON, Sheriff of Allegheny County, Pennsylvania, et al., Appellees.**

**Appeal of Albert J. NIEDZIELSKI, and Peter P. Wojckowski, Individually and as members and representatives of the class, and all other members of the class.**

Supreme Court of Pennsylvania.

Argued Sept. 25, 1973.

Decided Jan. 27, 1975.

R. Stanton Wettick, Jr., Peter D. Jacobson, Neighborhood Legal Services, Assn., Pittsburgh, for appellants.

James R. Fitzgerald, Reed J. Davis, Donald S. Mazzotta, Davis & Mazzotta, Norman Paul Wolken, Pittsburgh, for appellees.

Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

NIX, Justice.

Robert D. Mayhugh and his wife, Sarah, instituted an action in equity on their behalf and on behalf of all others similarly situated seeking to enjoin the Prothonotary and Sheriff of Allegheny County from continuing certain practices regarding the waiver of exemption rights granted to a debtor under the Act of April 9, 1849, P.L. 533, § 1, 12 P.S. § 2161.[1] Subsequently Mellon National Bank and Trust Company, Western Pennsylvania National Bank, Associates Financial Services Company, Inc., Signal Finance Corporation and Plaza Rubber Corporation were permitted to intervene as defendants. Albert J. Niedzielski, Peter P. Wojckowski, appellants herein, in their individual capacity and as representatives of a class of persons similarly situated, and Maggie Graves were permitted to intervene as plaintiffs. The

1. This Act provides that:
   "In lieu of the property now exempt by law from levy and sale on execution, issued upon any judgment obtained upon contract and distress for rent, property to the value of three hundred dollars, exclusive of all wearing apparel of the defendant and his family, and all bibles and school books in use in the family (which shall remain exempted as heretofore), and no more, owned by or in possession of any debtor, shall be exempt from levy and sale on execution or by distress for rent."

decree nisi, after dismissal of the exceptions filed thereto, was made final. The Chancellor granted a permanent injunction, which restrained the Prothonotary and Sheriff of Allegheny County from issuing and executing writs of execution containing the notation that the rights afforded by the Act of April 9, 1849, *supra*, had been waived where the judgment debtor had not been apprised by the allegation in the complaint that such rights had been waived.

The debtors in the action below fell within two separate categories. The first group consisted of those persons who had judgments entered against them pursuant to complaints filed with the Prothonotary of the Court of Common Pleas or with the Justices of the Peace which *did not contain an averment of waiver of exemption benefits*. The second group were those debtors who had judgments entered against them pursuant to complaints that *did aver the fact of waiver of exemption rights*. The court below, after hearing, granted relief to the group where there had been no averment of waiver and denied injunctive relief in those cases where the complaints did contain an averment of waiver. The present appellants are members of the latter group.

The court below found that the exemption provided under the Act of April 9, 1849, *supra*, may be waived but granted relief to those debtors where there had been no averment in the complaint on the theory that such a procedure was not in compliance with due process. Appellants contend that they too are entitled to relief premising their claim on the theory that the Act of April 9, 1849, does not permit the protection provided to be waived. We agree that a debtor may not, either expressly or by implication, waive the right of exemption as provided for in the Act of April 9, 1849, and therefore sustain the appeal of the instant appellants.[2]

2. This Court exercises jurisdiction in this matter pursuant to the Act of July 31, 1970, P.L. 673, § 202(4), 17 P.S. § 211.202(4).

In Pennsylvania, it was held in *Case v. Dunmore*, 23 Pa. 93 (1854) and thereafter, by its progeny,[3] that such an exemption is a personal privilege, which the debtor may waive at pleasure. In *Case v. Dunmore, supra,* this Court reasoned:

> "Notwithstanding the benevolent provisions of the statute in favor of unfortunate and thoughtless debtors, it was far from the intention of the legislature to deprive the free citizens of the state of the right, upon due deliberation, to make their own contracts in their own way, in regard to securing the payment of debts honestly due. Creditors are still recognised as having some rights; and it was not the intention of the legislature to destroy them by impairing the obligation of contracts." Id. at 94–95.

In *Bowman v. Smiley*, 31 Pa. 225 (1858) we stated:

> "Notwithstanding the doubts which have sometimes been expressed, it is now generally conceded that the *statutory privilege of the exemption* of a portion of his property from levy and sale, under execution, is one which a debtor may waive. When made at the time the debt is created, the waiver is based upon the same consideration as that upon which rests the liability to pay, and is therefore irrevocable. Such a waiver is a contract, that, so far as regards the judgment-creditor, in whose favor it is made, the debt shall be collectable in the same manner *as if the Act of April 9th 1849 had never been passed.* Against an execution issued upon such a judgment, it is conceded, that the debtor has no right to retain any portion of the property which, without the act, would be liable to levy and

---

3. *Lauchs' Appeal,* 24 Pa. 426 (1855); *Bowman v. Smiley,* 31 Pa. 225 (1858); *Kyle and Dunlap's Appeal,* 45 Pa. 353 (1863); *Adams v. Bachert,* 83 Pa. 524 (1877); *Appeal of the Overseers of the Poor of White Deer Township,* 95 Pa. 191 (1880); *Front and Huntingdon Building and Loan Association v. Berzinski,* 130 Pa.Super. 297, 196 A. 572 (1938).

sale; nor has he any more right to an appraisement."
(Emphasis added). *Id.* at 226.

A review of the historical setting in which this legislation was enacted compels us to concede that these earlier decisions were erroneous in reaching the conclusion that the protection of this Act was able to be waived.

■■ At common law, through reasons of feudal policy, all of a debtor's property was liable to execution for the payment of his debts, and his person was subject to imprisonment. See Pendleton, Debtors' Exemption in Pennsylvania, 17–18, 27–37 (1886); Smyth, The Law of Homestead and Exemptions, 49–56 (1875); Thompson, A Treatise on Homestead and Exemption Laws, 4–5 (1878); Graubart, "Waiver of Debtors' Exemptions in Pennsylvania", 44 Dick.L.Rev. 130 (1943). This view prevailed in the United States until the turn of the nineteenth century when, either by state constitutions or legislative acts, or by both, various pieces of legislation were passed for the benefit of the debtor and his family exempting from levy and sale a debtor's lands, tenements and portions of his personal property. In Pennsylvania, this more humane tendency in legislation manifested itself early in the nineteenth century [4] and culminated in

4. The first of these acts, Act of March 26, 1814, 6 Smith's Laws 215, provided for exemption for debtors, whose property was subject to execution, household utensils to the value of $13.00, workman tools to the value of $20.00, all wearing apparel, two beds and bedding, one cow and spinning wheel. The obvious intendment of the legislation reflected the belief that these items were sufficient for a debtor to *rehabilitate* himself. A series of acts followed incorporating all of the exemptions set forth in the criminal act as well as augmenting and extending the list of exempted articles and their amounts. Act of March 29, 1821, 7 Smith's Laws 426; Act of March 31, 1821, 7 Smith's Laws 427; Act of April 10, 1828, P.L. 285; Act of June 16, 1836, P.L. 765; Act of April 22, 1846, P.L. 476. This stream of legislation expressed a well defined governmental attitude toward debtors whose property was subject to execution and sale—that it was the better policy to permit a debtor to retain some of his property so as not to become a public charge, than permit a creditor to take everything from a debtor and thus render him unable to rehabilitate himself. Graubart, "Waiver of Debtors' Exemptions in Pennsylvania," 44 Dick.L.Rev. 130, 133 (1943).

the passage of the Act of July 12, 1842, abolishing imprisonment for debt, and the exemption Act of April 9, 1849. The true spirit of this legislation was accurately reflected in this Court's decision in *Freeman v. Smith*, 30 Pa. 264 (1858):

"The Act of Assembly of 1849 was kind and beneficent legislation, in favour of the poor and distressed. It put it out of the power of the creditor, often grasping and avaricious, to strip a debtor and his family of their only means of subsistence. It inaugurated a new era; for the first time, the law seemed to treat inability to pay, not as a crime, but as a possible misfortune, than the ancient frown of condemnation upon inability to pay." *Freeman v. Smith, Id.* at 266.

The legislature was obviously concerned with the situation of the debtor and not, as suggested in *Case v. Dunmore, supra* and *Bowman v. Smiley, supra,* with the protection of the creditor. This series of enactments reflected a realization that justice to a creditor may well result in oppression to a debtor. Further, it represented an application that stripping the poor and distressed of all of their wordly possessions in an effort to satisfy an obligation, albeit just, was not in the public interest where the result was to create a condition rendering the debtor and his dependents public charges. Read in conjunction with the Act of 1842, it is clear that there was an appreciation that freedom from imprisonment would be meaningless if the debtor could nevertheless, be stripped of all belongings and deprived of all means of regaining a modicum of economic stability. The policy and object of the legislation in conferring the exemption benefits was to afford the debtor, and his family, the prime necessities of life, and to furnish the insolvent a nucleus with which to begin life anew. It would be absurd to assume that a legislature would intend to permit such a basic and obviously strong policy to be completely frustrated by the mere alteration of the agreement. It is

a fundamental rule of statutory construction that the legislature would not be assumed to have intended a result which is unreasonable and absurd. 1 Pa. S. § 1922.

> "The statutes which allow a debtor . . . to retain, as against the legal remedies of his creditors, certain articles of prime necessity to a limited amount, are based upon views of policy and humanity, which would be frustrated if an agreement like that contained in these notes, entered into a connection with the principal contract, could be sustained. A few words contained in any note or obligation would operate to change the law between those parties, and so far disappoint the intentions of the Legislature. If effect shall be given to such provisions, it is likely that they will be generally inserted in obligations for small demands, and in that way the policy of the law will be completely overthrown." *Kneettle v. Newcomb,* 22 N. Y. 249, 250 (1860).

Unfortunately, the prognosis of this New York Court has proven to be a reality from our experience in this Commonwealth. We must reject the argument that allowing waivers of this fundamental right is justified because it is a relinquishment of a right voluntarily accomplished. It is clear that the spirit of this law was to protect the debtor against his improvidence and bad judgment. The legislative intention to protect the debtor against his own thoughtlessness and extravagance is further demonstrated by the succession of amendments to the initial Act providing for an exemption. Each successive change in the law increased the protection provided which further reflects the strong concern for the welfare of the debtor. See, Pendleton, Debtors' Exemption in Pennsylvania, 32–33 (1886).

We do not agree that the strictures of the doctrine of stare decisis should prevent us from rectifying

an error that has long been recognized.[5] The doctrine of stare decisis was never intended to be used as a principle to perpetuate erroneous principles of law. While we fully ascribe to Lord Coke's evaluation of the importance of certainty in the law, this end obviously cannot outweigh, the necessity of maintaining the purity of the law. The court's function is to interpret legislative enactments and not to promulgate them. Where, as here, by our decisions in *Case, Bowman* and the other decisions that followed, the Court distorted the clear intention of the legislative enactment and by that erroneous interpretation permitted the policy of that legislation to be effectively frustrated, we now have no alternative but to rectify our earlier pronouncements and may not blindly adhere to the past rulings out of a deference to antiquity.

The wisdom of the policy behind legislative enactments is generally not the concern of the court. *Ferguson v. Skrupa,* 372 U.S. 726, 83 S.Ct. 1028, 10 L.Ed.2d

5. "Perhaps *it would have been well, if the court had set out by denying the capacity of the debtor to waive the statutory exemption in favor of any* creditor." (Emphasis added). Shelly's Appeal, 36 Pa. 373, 380 (1860):
"Had it been determined, immediately after the passage of the Act of April 9th, 1849, that a debtor could not deprive himself of that exemption from execution of a portion of his property allowed by the statute, by any agreement made at the time the debt was created, *the object of the legislature would doubtless have been better secured.* But it having been ruled that the exemption is a mere personal privilege which the debtor can *at any time* waive, and that a waiver once made cannot be retracted, the whole force of the statute is eluded by simply a change in the form of the contract." (Emphasis added). *Firmstone v. Mack,* 49 Pa. 387, 393 (1865);
"That he may waive this option under the Act of 1849, not only results out of the nature of the thing, but has been expressly declared in many cases, *in some, however, with regrets expressed that we did not set out with a different construction and hold the privilege or option indefeasible.* If it were, *res integra;* if, with the experience and observation we have had, we were now for the first to pass upon the question whether debtors could waive their rights under the Act of 1849 or widows theirs under the Act of 14th April, 1851, *we would be very likely to deny it altogether, and to stick to the statutes as they are written."* (Emphasis added). *O'Nail v. Craig,* 56 Pa. 161, 162 (1867).

93 (1963); *Olsen v. Nebraska ex rel. Western Ref. & Bond Ass'n.*, 313 U.S. 236, 61 S.Ct. 862, 84 L.Ed. 1305 (1941); *Nebbia v. New York*, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940 (1934). However, we would be remiss if we failed to observe the absence of any reasonable basis for accepting the view that these rights may be waived. The court in *Case* was concerned with "a poor man . . . unjustly kept out of money due to him" *Id* 23 Pa. at 95. While this may have had some validity during the middle 19th century it is clearly inapplicable to the sophisticated lending institutions of this day. Unlike in former years where the debtor and creditor may have been on a relatively equal basis, such is clearly not the case in our current society nor can it be seriously argued that today's credit industry would be critically jeopardized or curtailed because the creditor was required in all cases to respect the exemptions. The fact that the majority of the states of this nation have embraced the principle that this exemption cannot be waived [6] refutes any argument that such a position would adversely affect the financial sector.

---

6. Jurisdictions refusing to enforce waiver of exemption clauses include California (*Industrial Loan and Investment Co. v. Superior Court*, 189 Cal. 546, 209 P. 360 (1922)); Colorado (*Weaver v. Lynch*, 79 Colo. 537, 246 P. 789 (1926)); District of Columbia (*Wallingsford v. Bennett*, 1 Mackey 303 (1881)); Florida (*Sherbill v. Miller Mfg. Co.*, 39 So.2d 28 (1956)); Illinois (*Curtiss v. Ellenwood*, 59 Ill.App. 110 (1895)); Indiana (*Maloney v. Newton*, 85 Ind. 565 (1882)); Iowa (*Curtis v. O'Brien*, 20 Iowa 376 (1866)); Kansas (*Iowa Mut. Ins. Co. v. Parr*, 189 Kan. 475, 370 P.2d 400 (1962)); Kentucky (*Moxley v. Ragan*, 73 Ky. 156 (1873)); Minnesota (*Benning v. Hessler*, 144 Minn. 403, 175 N.W. 682 (1920)); Mississippi (*Teague v. Weeks*, 89 Miss. 360, 42 So. 172 (1906)); Missouri (*Meyer Bros. Drug Co. v. Bybee*, 179 Mo. 354, 78 S.W. 579 (1904)); Montana (*Anaconda Federal Credit Union v. West*, 483 P.2d 909 (S.Ct.Mont.1971)); New York (*Kneettle v. Newcomb*, 22 N.Y. 249 (1860)); North Carolina (*Howell v. Roberson*, 197 N. C. 572, 150 S.E. 32 (1929)); Ohio (*Dennis v. Smith*, 125 Ohio St. 120, 180 N.E. 638 (1932)); Tennessee (*Sherwin-Williams Co. v. Morris*, 25 Tenn.App. 272, 156 S.W.2d 350 (1941)); Washington (*Slyfield v. Willard*, 43 Wash. 179, 36 P. 392 (1906)); and Wisconsin (*Maxwell v. Reed*, 7 Wis. 582 (1859)).

138

■ We therefore hold that the provisions of the Act of April 9, 1849, *supra,* may not be waived either expressly or by implication.[7]

The decree of the Court insofar as it is inconsistent with this opinion is reversed and vacated and the cause remanded for further proceedings consistent herewith.

Each party to bear own Costs.

JONES, C. J., took no part in the consideration or decision of this case.

7. Prior decisions to the contrary are overruled. See, note 3, *supra.*