## Associates Consumer Discount v. Teets

*Davis-Mazzotta*, for plaintiff.
*William H. Peoples*, for defendant.
*Kimmel, Rascona, Yelovich & Bowman*, for garnishees.

CAPUZZI, *J.*, October 25, 1978—This case comes before the court en banc on the preliminary objections of defendant, Ruth A. Teets, to a writ of fraudulent debtor's attachment. (Defendant John E. Teets has filed no preliminary objections.) Her first preliminary objection is that the Pennsylvania fraudulent debtor's attachment procedures lack procedural due process and are, therefore, unconstitutional. So far as we are aware this issue has not yet been considered by the appellate courts of Pennsylvania, and it is the considered opinion of this court for reasons hereinafter explained that the challenged rules, Pa.R.C.P. 1285-1292, satisfy the

requirements of due process and are compatible with the Fifth and Fourteenth Amendments to the Federal Constitution. Defendant's second preliminary objection is that the attachment issued against her property is invalid insofar as she was not permitted her statutory exemption under the Act of April 9, 1849, P.L. 533, sec. 1, 12 P.S. §2161. This court is of the opinion that this claim must be allowed.

As authority for defendant's initial contention concerning the constitutionality of the fraudulent debtor's attachment procedure, defendant relies upon the case of Jonnet v. Dollar Savings Bank, 392 F. Supp. 1385 (W.D. Pa. 1975), aff'd 530 F. 2d 1123 (3d Cir. 1976), wherein the Pennsylvania procedures regarding foreign attachment were declared unconstitutional. Apparently defendant's a fortiori argument is that because that procedure has been held unconstitutional and fraudulent debtor's attachment is a related procedure, it must also be unconstitutional.

So superficial an argument fails to account for the significant differences between the two procedures. The Jonnet opinion itself notes "[t]he contrast between the procedural safeguards found in Pennsylvania's Fraudulent Debtor Attachment procedure (Pa. Rule 1286) and the lack thereof as to foreign attachment. . . ." 392 F. Supp. at 1387.

The first important variation between the two procedures is that fraudulent debtor's attachment requires that there be evidence that the property sought to be seized is about to be fraudulently removed, concealed, or transferred. Foreign attachment merely required that the defendant in the case be a nonresident of Pennsylvania. This court

opines that the probability the property sought to be attached will disappear creates an "extraordinary situation" within the meaning of Fuentes v. Shevin, 407 U.S. 67, 92 S. Ct. 1983, 32 L.Ed. 2d 556 (1972). As such, pre-seizure notice and hearing are not required so long as the post-seizure proceedings provide the debtor's interests with sufficient protection. As Justice White stated in Mitchell v. W. T. Grant Co., 416 U.S. 600, 94 S. Ct. 1895, 40 L.Ed. 2d 406 (1974) (which upheld a Louisiana sequestration statute remarkably similar to the rules at issue here): "The danger of destruction or alienation cannot be guarded against if notice and a hearing before seizure are supplied. The notice itself may furnish a warning to the debtor acting in bad faith." 416 U.S. at 609. In the most recent Supreme Court case dealing with attachments: North Georgia Finishing, Inc. v. Di-Chem, Inc., 419 U.S. 601, 95 S. Ct. 719, 42 L.Ed. 2d 751 (1975), Justice Powell noted in his concurrence that a requirement of pre-garnishment notice and a prior hearing "would leave little efficacy to the garnishment and attachment laws of the 50 States." 419 U.S. at 611.

The second important difference between the two procedures is that fraudulent debtor attachment requires the plaintiff to file a bond to protect the debtor. Failure to provide such a bond was one of the reasons given in Jonnet v. Dollar Savings Bank, 530 F. 2d 1123, 1130 (1976), for invalidating the foreign attachment rules. That court was of the opinion that the Constitution requires "machinery to indemnify a defendant for damages due to wrongful attachment." Id. The bond necessitated by Rule 1287 provides such indemnification whenever "it is adjudged that either the cause of

action or the ground for attachment set forth in the complaint is not established." Pa.R.C.P. 1287(b).

This raises a third dissimilarity between the constitutionally invalid foreign attachment procedure and the fraudulent debtor procedure which is that the latter requires that the complaint underlying the attachment be filed and served together with the attachment: Pa.R.C.P. 1287 and 1289. The foreign attachment procedure permitted plaintiff to attach defendant's property up to five days before filing the complaint, thus seizing property without permitting the preparation of a defense. See Jonnet, supra, 530 F. 2d at 1129.

The fourth and most important difference concerns the availability of a prompt post-attachment hearing. No such hearing is provided for under the constitutionally deficient foreign attachment procedure, but such a hearing is provided for by Rule 1291(a) of the fraudulent debtor's attachment procedure. That rule provides that: "Within such time as not to delay the trial, the defendant may raise the defense of the absence of ground for attachment by a petition to dissolve the attachment."

As Justice Powell states in his concurrence to the Di-Chem decision: "The basic protection required for the debtor is the assurance of a prompt postgarnishment hearing before a judge. Such a hearing affords an opportunity to rectify any error in the initial decision to issue the garnishment. When combined with the availability of the garnishor's bond to compensate for any harm caused, the possibility of prompt correction of possible error suffices to satisfy the requirements of due process in this context." North Georgia Finishing, Inc. v. Di-Chem, Inc., supra, 419 U.S. at 611, fn. 3. To the

same effect, see the opinion of the court by Justice White in Mitchell v. W. T. Grant, supra, wherein the court stated that "it comports with due process to permit the initial seizure on sworn ex parte documents, followed by the early opportunity to put the creditor to his proof." 416 U.S. at 609.

This court feels that the hearing provided by Rule 1291(a) affords sufficient protection to the debtor's interests. In fact, such a hearing may be the only fair and practical way to deal with the situation when any pre-attachment proceeding would necessarily take place in the defendant's absence. With such a hearing, a defendant who is not attempting to commit a fraud on the creditor-plaintiff can quickly have the attachment dissolved and have his damages, including all legal costs, paid out of the bond filed by plaintiff. Since the burden of proof is always on plaintiff to show the fraud, in doubtful cases the debtor will still be entitled to dissolution of the attachment and damages. This court is of the opinion that this procedure is in full compliance with the guidelines laid down by the United States Supreme Court.

Moreover, the only distinction between the fraudulent debtor attachment procedure here at issue and the Louisiana procedure upheld in Mitchell v. W. T. Grant Co., supra, is that Pennsylvania permits the prothonotary to issue the initial writ of attachment while the Louisiana procedure requires a judge's signature. In effect, this is a distinction without a difference, and we believe that it does not affect the constitutional validity of the procedure.

Six of the justices currently seated on the Supreme Court are apparently of the same opinion.

Justices Stewart and Marshall (as well as former Justice Douglas) are on record as stating that "the fact that the official who signs the writ after the ex parte application is a judge instead of a court clerk is of no constitutional significance. . . . Whether the issuing functionary be a judge or a court clerk, he can in any event do no more than ascertain the formal sufficiency of the plaintiff's allegations. . . ." Mitchell v. W. T. Grant, supra, 416 U.S. at 632-3 (dissent). Justices Blackmun, Rehnquist, and Burger feel that "[t]he clerk-judge distinction . . . surely is of little significance so long as the court officer is not an agent of the creditor." North Georgia Finishing v. Di-Chem, supra, 419 U.S. at 619 (dissent). Justice Powell is of the same opinion, Id., 419 U.S. at 611, fn. 3.

While there has been some suggestion in the lower Federal courts that due process requires that a judge issue the initial writ of attachment, this court cannot disregard the clear words of a majority of the Supreme Court. A realistic consideration of the situation reinforces this view. So long as defendant is excluded from the pre-attachment proceedings a judge is in no better position to disbelieve the plaintiff's allegations than a clerk. Once it has been determined, under the standards of Fuentes v. Shevin, supra, that there is an "extraordinary situation" which does not require the presence of the defendant at a pre-seizure adversary hearing, then the presence of a judge does not add any significant safeguard. The defendant is far more capable of protecting his own interests at the post-seizure hearing than a judge would be at any kind of ex parte pre-seizure hearing imaginable.

It is the conclusion of this court that procedural due process does not require that a debtor-

defendant receive any more protection than is already provided by Rules 1285-1292.

Defendants' second preliminary objection is more compelling. Defendant maintains that the statutory exemption provided by the Act of April 9, 1849, P.L. 533, sec. 1, 12 P.S. §2161, should have been applied in this case to prevent the attachment of some portion of her property.

Plaintiff claims that the exemption is not applicable in attachment proceedings, in the alternative, that fraudulent conduct operates as a waiver of the exemption privilege, and that plaintiff's security interest in the goods (as collateral on a loan) makes the exemption inapplicable. These contentions are without merit.

Rule 1252 (incorporated into the fraudulent debtor's attachment rules by Rule 1285) provides that an attachment may be issued to attach property "not exempt from execution," thus making it clear that property exempt from execution is also exempt from attachment. See 4 Goodrich-Amran 2d §1252:11, particularly fn. 49, p. 54.

This court is of the opinion that plaintiff's other contentions are governed by the decision of the Pennsylvania Supreme Court in Mayhugh v. Coon, 460 Pa. 128, 331 A. 2d 452 (1971). In that case the court decided that "a debtor may not, either expressly or by implication, waive the right of exemption as provided for in the Act of April 9, 1849. . . ." 460 Pa. at 131. Thus, fraudulent conduct cannot operate as an implied waiver of the exemption since it "is clear that the spirit of this law was to protect the debtor against his improvidence and bad judgment." 460 Pa. at 135. Moreover, we cannot interpret the granting of a security interest in otherwise exempt goods as an express waiver of the exemp-

tion since it "would be absurd to assume that a legislature would intend to permit such a basic and obviously strong policy to be completely frustrated by the mere alteration of the agreement." 460 Pa. at 134.

The case of Mayhugh v. Coon, supra, constituted a reversal of a long line of cases which had permitted the debtor's exemption to be waived or lost. Thus the older line of cases cited by the plaintiff have little persuasive value in the light of the clear import of Mayhugh. In Pennsylvania today the debtor's exemption cannot be waived.

Wherefore this court enters the following

## ORDER

And now, October 25, 1978, it is hereby ordered, adjudged and decreed that defendant Ruth A. Teets' preliminary objection based on the alleged unconstitutionality of Pa.R.C.P. 1285-1292 is dismissed, and that defendant's preliminary objection concerning the denial of the debtor's exemption provided by the Act of April 9, 1849, P.L. 533, sec. 1, 12 P.S. §2161, is hereby sustained, and defendant shall be permitted to claim her exemption as provided in Pa.R.C.P. 3123.