## APPEAL OF ENOCH MILLER.

FROM THE DECREE OF THE COURT OF COMMON PLEAS OF
UNION COUNTY.

Argued May 22, 1888—Decided October 1, 1888.

1. On distribution of a fund to liens, when the lien of the first creditor
is superior to that of the second but inferior to that of the third, the
first creditor, by reason of the superiority of the second over the third,
will take the fund because of his superiority over the second: Thomas's
App., 69 Pa. 120.

2. The liens upon the proceeds of sale of a decedent's land, in the order
of priority were (*a*) two mechanics' liens; (*b*) two mortgages; (*c*) one
mechanics' lien; (*d*) the claim for the widow's exemption under the
act of April 14, 1851, P. L. 613, charged under the act of November 27,
1865, P. L. (1866) 1227:

*Held,* That the fund was distributable to the liens in the order of priority
stated: Bowyer's App., 21 Pa. 210; Shelly's App. 36 Pa. 373 (over-
ruling Johnston's App., 25 Pa. 116); Thomas's App., 69 Pa. 120, and
Huffort's App., 10 W. N. 528, followed.

Before GORDON, C. J., PAXSON, STERRETT, GREEN and
WILLIAMS, JJ.; TRUNKEY and CLARK. JJ., absent.

No. 67 January Term 1888, Sup. Ct.: court below, Lev. Fa.
No. 20 September Term 1886, C. P.

In January, 1886, John F. Bilger, of Mifflinburg, died seised
of a single parcel of real estate subject to liens of record.
His widow, Sadie H. Bilger, made claim to the exemption
under the act of April 14, 1851, P. L. 613, and the appraisers
reporting that the real estate could not be divided so as to set
apart $300 in land, the court confirmed the report and decreed
that the exemption claim should be charged upon the whole
tract, under §§ 1 and 2, act of November 27, 1865, P. L. (1866)
1227.

On September 16, 1886, the real estate was sold at sheriff's
sale upon two writs of levari facias, one to No. 20 September
Term 1886, sur judgment upon a mechanics' lien in favor of
Enoch Miller, and one to No. 22 September Term 1886, sur
judgment upon a mortgage executed by the deceased to Anna

Auditor's Report.

B. Bilger.   Out of the fund realized by the sale, to wit, $660.99, the sum of $341.99 was paid out by the sheriff in satisfaction of the mortgage of Anna B. Bilger, and *Mr. A. H. Dill* was appointed auditor to report a distribution of the balance, to wit, $319. 01.

On March 14, 1887, the auditor filed a report which ascertained the liens upon the land at the death of the owner to have record priority as follows, some of the amounts including interest:

| | | | |
|---|---|---|---|
| 1. Enoch Miller, mech. l., | filed July 22, 1884, | $170.00 |
| 2. Bowes & Swineford, mech. l., | "   Dec. 11, 1884, | 22.78 |
| 3. Anna B. Bilger, mortgage, | "   April 29, 1884, | 341.99 |
| 4. L. E. & A. W. Keyser, mortgage, | "   June 19, 1885, | 850.00 |
| 5. Geo. Rearick, mech. l., | "   July 14, 1885, | 38.44 |

The report, so far as material to the case decided then proceeded:

An inspection of the record of the mechanics' lien filed by Enoch Miller shows that the first item of the bill of particulars is dated November 24, 1883.   A like inspection of the mechanics' lien of Bowes & Swineford shows the first item dated January 26, 1884.   As no assault was made upon the integrity of the liens these dates must be taken as true, especially in the case of Enoch Miller, which has passed into judgment.   There was no evidence as to the time of the commencement of the building other than the dates above mentioned contained in the bills of particulars filed.   But this evidence was deemed sufficient in Denkle's Est., 1 Pears. 213, to establish the fact that the building was commenced before the entry of a judgment. . . . . . There are other cases to the same point.   The auditor therefore finds as a fact that the building was commenced prior to the record of the mortgage of Anna B. Bilger and that the mechanics' liens of Enoch Miller and Bowes & Swineford are the first liens of record on the property sold by the sheriff.

          *     *     *     *     *     *     *     *
Disposing thus, of preliminary questions, the main point in dispute is reached and a few general remarks are necessary in order to obtain a clear view of the case.   If there were nothing to be considered except the liens remaining after the payment by the sheriff of the Bilger mortgage the distribution would be an

easy matter, and would be as follows: The claim of the widow would take precedence of the mechanics' liens, but as the widow could not take in preference to the Keyser mortgage the money due her would be appropriated to that mortgage, and as the amount of that mortgage is sufficient to exhaust the fund after deducting costs of audit, without appropriating to the mortgage the full amount of $300, the distribution would be complete. But the auditor is unable to overlook the payment by the sheriff of the Bilger mortgage and its effect upon the rights of the parties in this distribution. Such payment is before him in the return offered in evidence to the writ of alias levari facias No. 20 September Term 1886, upon which the property was sold and the fund for distribution raised. At the time of such payment the claim of the widow had been adjudicated by the court; the mechanics' liens of Enoch Miller and of Bowes & Swineford were the first liens of record, and entitled to be paid in preference to the Bilger mortgage, but by reason of the legal superiority of the widow's claim over the mechanics' liens and of its legal inferiority to the Bilger mortgage the mechanics' liens were postponed and the money, which otherwise would have been paid in satisfaction of the mechanics' liens was appropriated to the Bilger mortgage. The legal effect of this transaction in the view of the auditor is the real contention in this case.

It is strongly urged that the transaction above detailed must be viewed in the same light as if the claim were for the exemption of $300 under the act of 1849. It is undoubtedly true that if such were the case the claim could be made available against the mechanics' liens, notwithstanding the fact that the mortgage was superior to it. This rule seems to be firmly settled: Hill v. Johnston, 29 Pa. 362. And the principle was practically applied in Bower's Appeal, 68 Pa. 126, where in the distribution the money was appropriated, first, to the mortgage, the last lien in order of priority, next to the debtor in satisfaction of his claim for exemption, and then to the first judgment lien, the first lien being a mortgage and not discharged by the sale. In other words, the debtor is not prejudiced in his exemption claim by the implied waiver of it in the execution of a mortgage, and the rule of distribution is different entirely from that applied to an express waiver by the debtor in the obligation or judgment. Is there any reason why this rule should not be applied to the claim

of the widow under the act of 1851. It is an exemption of property precisely similar to that of the act of 1849. The method provided for ascertaining the property is similar, and it is to all intents and purposes an exemption of property to the value of $300 against the creditors of her husband's estate. It has been distinctly held to be superior to mechanics' liens, and while in this case it is unfortunate that the widow must meet another mortgage with sufficient capacity to exhaust her claim, in the next case she may only be compelled to meet ordinary liens which are not under the peculiar guardianship of the law, by which they become mere securities for money or deeds for the land, as the exigency of the particular case may seem to require.

The auditor holds that the claim of the widow was not prejudiced by the payment by the sheriff of the Bilger mortgage and that she is entitled to present her claim in full. The result is the money must be distributed as heretofore stated, to wit: The mechanics' liens being postponed by the widow's claim, and the widow's claim postponed by the Keyser mortgage, the Keyser mortgage must be first paid the money, and as the amount of it will absorb the whole fund no other direction for distribution is made.

Exceptions in behalf of Enoch Miller, to the report of the auditor, after argument, were disposed of on September 17, 1887, by an opinion, BUCHER, P. J., which after stating the facts, proceeded:

This brings us to the main question, to wit: As the widow cannot take $300 exemption against either mortgage, but can as against the mechanics' liens, is the fund to be appropriated just as if she had no claim whatever? It is very clear that she can take no money whatever out of court until both mortgages are satisfied: Bower's App., 68 Pa. 126 ; Thomas's App., 69 Pa. 120; Hill v. Johnston, 29 Pa. 362; Kauffman's App., 112 Pa. 645; Nerpel's App., 91 Pa. 334; Conrad v. Building Association, 18 W. N. 133. If it is argued she is thus driven from the field, what has she to do with the appropriations? Are the mortgage creditors to be preferred over the prior lien creditors, because their superior position accomplished the result? Or are they substituted to her rights? But this cannot be, as they have not acquired her rights; they only pre-

vail because she is without right as against them. When she disappears, and neither side to the controversy represents her rights, the contest is simply one of priority between the remaining combatants. The situation of the latter is in no wise different from what it would be had the widow never claimed, or had died before her husband, and then, or in that case, no question would be raised as to the mechanics' lien being prior and superior to the mortgages, and would take the fund, and only the surplus go to Anna B. Bilger's mortgage as prior to the Keyser mortgage, and then the latter would get the balance, which it would consume without being paid in full. This is certainly the logical result of well-known legal principles, namely : " If a third incumbrance be superior to the first, but inferior to the second, yet as you could not prefer the third over the first without giving it preference over the second, the appropriation is made just as if the first was first, second next, and third last :" Wilcocks v. Waln, 10 S. & R. 380 ; M. & M. Bank v. Bank of Penn., 7 W. & S. 343 ; Tombs' App., 9 Pa. 67 ; Loucheim's App., 67 Pa. 53.

Now these mortgages, which are the third and fourth liens, are preferred to the first and second liens and no one benefited except the mortgagees, and thus the first and second liens are postponed to their inferiors, Nos. 3 and 4. Unless it is res adjudicata this should not be done,—it is unjust. Bower's App., 68 Pa. 126, is cited as authority for the position that the mortgages are first to be satisfied and then the widow's exemption next. That case in a sense so decides, because there the mortgage was the first lien and judgments the second and third, and after paying the mortgage there was enough money left to pay the $300 exemption to the debtor, and still some left to go to the first judgment; but here the widow's claim remained in the field, asserting itself, and the contest was not between the judgment creditors and the mortgage, but between the judgment creditors and the exemption claimant, who still was in position to drive back the former, although he had been displaced by the mortgage ; whereas, in the case under consideration, the widow has disappeared, there being under no contingency any fund out of which she can receive anything. In Hill v. Johnston, 29 Pa. 362, the mortgage was the first lien, and when that was satisfied the debtor was allowed his exemp-

tion as against subsequent judgment creditors. If you take Kauffman's App., 112 Pa. 645, there the decree of the Orphans' Court wiped out the judgment liens, so that when the mortgagee came to sell, the liens were out of his way. The only answer to this reasoning is, that, were we to follow this logic and allow the mechanics' lien to take the fund as against the mortgages, the same anomaly results that the argument has been attempting to demolish, namely: the inferior lien will prevail over the superior, in that the mechanics' lien will then be preferred to the widow's superior exemption, and thus in avoiding the rock of Scylla we fall into the whirlpool of Charybdis. We must take a new reckoning; and doubtless the learned auditor, seeing the dilemma, determined as he did, upon the military theory that the widow's exemption had driven the mechanics' liens from the field, and that until the widow's claim is satisfied they cannot return, and the battle must go on between the forces remaining, the mortgages and the widow, and the former having vanished the latter, the spoils are secured, removed, and the field barren on the return of the mechanics' liens. To hold otherwise would be an exception to a plain rule of distribution, namely: That where the fund is consumed wholly by the mortgages, so that in no event will the widow get anything, then, as between lien-creditors, priority alone determines the right. If it be said that this view really prefers the junior to the senior lien, we answer that with the junior mortgage lien removed or absent, the prior lien would get nothing anyway; so that it is the superior character of the mortgage which works the defeat of the widow; in fact, it fights the battle and conquers and is fairly entitled to the spoils. . . . . .

We have now answered every exception substantially and they are all overruled and dismissed, and the report of the auditor confirmed absolutely.

A decree of distribution having been made in accordance with the foregoing opinion, the exceptant took this appeal and assigned as error the decree dismissing his exceptions.

*Mr. Andrew A. Leiser* (with him *Mr. Charles S. Wolfe and Mr. Horace P. Glover,*) for the appellant:

Unless some controlling reason be shown to the contrary, the

maxim, Qui prior est tempore, potior est jure, must govern this distribution. We do not admit the correctness of the position that the principles applicable to a debtor's exemption apply equally well in the present case. The debtor's claim for exemption is a claim to remove $300 of the fund from the grasp of all liens, and not to appropriate it to a particular lien. In the present case, the question is a question of distribution between liens, each of the claims having a lien on the fund.

I. Discussing the question however, from the point of view of the debtor's exemption, assume that the first, second and fifth liens are judgments without waivers, instead of mechanics' liens.

1. Then, if there were no claims of exemption by the debtor, the distribution would be to the liens as they stand in the order of their priority. But, the debtor making his claim, his exemption would be operative, in the present case, as to the first, second and fifth, but inoperative as to the third and fourth. The effect of this, according to the court below, would be to oust the first and second and give the fund to the third and fourth, thus by the act of the debtor changing the order of lien as otherwise determined by law. But in Bowyer's App., 21 Pa. 214, this court says: "All transfers and all waivers of his (the debtor's) right, whether express, or implied, inure to the benefit of his creditors in the proper order of their liens."

2. The correct principle governing questions as to the debtor's exemption is thus stated by Mr. Justice AGNEW in Thomas's App., 69 Pa. 122: "When the lien of the first creditor is superior to that of the second but inferior to that of the third, and the lien of the second is superior to the third, the first creditor will take the fund because of his superiority to the second, by reason of the superiority of the second over the third. So, in the case of existing liens on the subject matter of the exemption of the debtor, though his exemption would prevail against the first lien creditor, yet, being inferior to the claim of the second lien creditor, he is prevented from taking the fund out of court, and the court being called on to make distribution, awards the fund to the first lien creditor, because his lien is superior in law to that of the second, and the law will not permit the course of distribution to be interfered with by the debtor."

3. If it be said that this quotation is directly opposed to the reasoning of the lower court in Bower's App., 68 Pa. 128, we reply : (*a*) The principle as stated in Thomas's Appeal is a broad one, and of universal application; (*b*) it is of later and therefore of greater authority; (*c*) Bower's Appeal shows on its face such a contradiction of language as to throw serious doubt upon it; (*d*) this court, by affirming Huffort's App., 10 W. N. 528, which expressly disregards Bower's Appeal as an authority, have practically overruled it.   At all events, under Bower's Appeal, as modified by Huffort's Appeal, the amount to be appropriated to the mortgages, the third and fourth liens, could not exceed the amount of the exemption $300, and the entire fund would be divided into two parts, $300 applicable to the mortgages, against which the exemption is inoperative, and the other, $360.90, to be distributed to the liens according to their priority, and necessarily in the present case to the mechanics' liens first.

II. But we do not admit that the present case is a parallel case.   On the contrary, it is purely and simply a question of distribution.

1. By the decree of the court upon the matter of the widow's appraisement, $300 became a lien in her favor upon the land, and upon the proceeds thereof when converted by sale, until discharged according to law : Detweiler's App., 44 Pa. 245. And it is admitted : (*a*) That the widow's claim is superior to that upon the mechanics' liens; (*b*) that her claim is inoperative as against the mortgages; (*c*) and further that the mechanics' liens as liens are superior to the mortgages.   We have, then, the very case stated by Mr. Justice AGNEW, in Thomas's App., 69 Pa. 122 : "When the lien of the first creditor is superior to that of the second, but inferior to that of the third, and the lien of the second is superior to the third, the first creditor will take the fund because of his superiority to the second, by reason of the superiority of the second over the third."

2. Neither the learned auditor, nor the learned judge in the court below has shown a reason why this principle, one of universal application, should not apply to the present case.   The fact that the widow's exemption is a creature of statute, a veritable gift to her, in no way affects the question.   So is the lien of a judgment, of a mechanics' lien, of a mortgage.   Moreover,

in Wilcocks v. Gibbs, 10 S. & R. 382, it is expressly decided that the United States, given a preference by act of congress over other creditors of insolvent debtors, had no such preference as to make an exception to the principles of distribution above cited. Therefore, it follows that the fund should have been distributed to the first, second, third, and fourth liens as they stood in order of priority.

*Mr. W. H. Hackenberg* (with him *Mr. P. L. Hackenberg*), for the appellee:

1. While it is true that the auditor finds the order of the liens to be as stated in the argument, it is also true that he finds as a fact that there was no evidence as to the time of the commencement of the building, other than the dates of the items contained in the bills of particulars attached to the claims. But the law is settled that the lien is not in any sense evidence in the cause: Hills v. Elliott, 16 S. & R. 56; McCay's App., 37 Pa. 128. It is not the time of furnishing the materials, or the time of commencing or finishing the work, but the time of the commencing the building of the house, that gives the date of the lien: Pennock v. Hoover, 5 R. 307; Parrish's App., 83 Pa. 111; Cox v. Flanagan (N. J.), 1 Cent. R. 682. Instead of being the third lien, the Anna B. Bilger mortgage was therefore the first lien. But if the conclusions are correct, there can be no reversal because arrived at from erroneous premises. In no event could the mechanics' liens take the money in court, for the reason that they could not prevail against the claim of the widow, her claim being superior to that of a mechanics' lien creditor: Hildebrand's App., 39 Pa. 133. It follows, therefore, that the mortgage being superior to the widow's claim, as decided in Nerpel's App., 91 Pa. 334; Conrad v. Building Ass'n, 18 W. N. 133, the distribution to the Keyser mortgage was rightly made.

2. Admitting, for the purpose of argument, that the claim made by the widow for exemption creates two funds, and what is the result? The Anna B. Bilger mortgage being the first lien, is entitled to the first money, irrespective of the claim for exemption—that is, it takes its own money, money it is entitled to by reason of its priority and superiority. This leaves the other fund, the exemption fund, for distribution. It cannot

go to the mechanics' liens, because they are inferior to the widow's claim, but must go to the mortgage, which is superior to the claim of the widow: Bower's App., 68 Pa. 128. The contention that Bower's Appeal is unsupported by authority, brings us to the intimation of Justice WOODWARD, that "Hunsicker (the mortgagee) having a claim upon both (funds) and the judgment creditors upon one, equity will compel him to exhaust the first fund before resorting to the second:" Shelly's App., 36 Pa. 373; Huffort's App., 10 W. N. 529.

3. If this were the correct rule, the widow's claim would be exhausted by the mortgagee's resort to the first fund, and she would consequently be deprived of her right to claim exemption as against the mechanics' liens. That a debtor can so claim his exemption after the mortgage has been satisfied, is settled by the line of authorities from Hill v. Johnston, 29 Pa. 362, to Quinn's App., 86 Pa. 447. Now, assuming that the Anna B. Bilger mortgage was the first lien, after its payment the widow is entitled to her exemption out of the remaining fund, as against the mechanics' liens. It then follows, that the second fund thus created, being less than $300, must go to the Keyser mortgage by reason of its superiority to the widow.

OPINION, MR. JUSTICE GREEN:

We think this case is governed by our ruling in the case of Thomas's App., 69 Pa. 120. We there held that "Where the lien of the first creditor is superior to that of the second but inferior to that of the third, and the lien of the second is superior to the third, the first creditor will take the fund because of his superiority to the second, by reason of the superiority of the second over the third." In practical effect this rule has been applied in other cases both before and since Thomas's Appeal. Thus in Bowyer's App., 21 Pa. 210, we said, BLACK, C. J. : "All transfers and all waivers of his (the debtors) right whether express or implied, enure to the benefit of his creditors in the proper order of their liens. Whatever he does not claim for himself or his family, he leaves in the general fund under the control of the court, to be distributed among those who are legally entitled to it; and such distribution is not to be regulated by any wish of his, no matter in what form he may choose to express it."

It is true this was said in a case in which the debtor had expressly waived his exemption in favor of a junior judgment creditor, but subsequent cases and additional reasoning have, we think, justified the application of the doctrine to cases of implied waiver as well as to those which were expressed. One reason for this was well stated by AGNEW, J., in Thomas's Appeal, supra, thus: "The principle of Bowyer's Appeal, reaffirmed in Shelly's App., 36 Pa. 380, overruling Johnston's App., 25 Pa. 116, is, that among creditors having *existing* liens upon the same property, the law regulates their priority and not the will of the debtor. Hence, if in consequence of his waiver he is not able to take the fund out of court, but the $300 must remain in custody for distribution among the creditors, they among themselves must be governed by their priority as fixed by law."

In Shelly's Appeal the whole subject was thoroughly discussed by judge George W. WOODWARD who said: "The doctrine of this case (Bowyer's Appeal), was recognized by judge ARMSTRONG in Hill v. Johnston, 29 Pa. 363, a case that did not turn upon a voluntary waiver, but upon an unsuccessful demand made by a debtor against his mortgagee; but Bowyer's Appeal was followed and made the ground of judge THOMPSON's ruling in Garrett's App., 32 Pa. 152. It accords well also, as we have seen, with the opinion of judge STRONG in Bowman v. Smiley, 31 Pa. 225, and McAfoose's Appeal, 32 Pa. 276, already cited. What stands opposed to it? Nothing so far as I remember except judge LEWIS's opinion in Johnston's App., 25 Pa. 117. That is in conflict with the ruling in Bowyer's Appeal; and was the case which the court below followed in making the decree now under review. It is not strange that some conflict of opinion should occur on a bench so changeable as ours in respect to the operation of a new and extraordinary statute; but experience and observation tend to confirm us in the soundness of the views advanced in Bowyer's Appeal. . . . Our position is taken; we have recognized in all the cases the capacity of the debtor to make the waiver, and have held it a binding contract betwixt him and the creditor in whose favor it was made; but we are admonished to go no further by way of enabling debtors to defeat the operation of statutes. If, by waiving his rights in favor of the last creditor on record, he may make him the first, he defeats not only the beneficent purposes of the exemp-

tion law, but all those statutes which recognize priority of lien and forbid assignments to preferred creditors."

Hill v. Johnston was the case of a mortgage, but it was not a case of conflicting executions.   The claim was made by the debtor to the surplus after paying the mortgage and it was allowed.   Although there were other judgments there were no other executions and as the claim of exemption would have been good against the judgments had executions issued upon them, and they were subsequent in date to the mortgage, no harm was done to them by allowing the debtor to take his claim out of the surplus.   The very serious difficulty of advancing an inferior lien to the position of the superior, by means of a waiver whether express or implied, did not arise at all.   Bower's App., 68 Pa. 126, in which the foregoing cases seem to have been disregarded is so reported that we cannot determine whether it raised any question other than the right of the debtor to take the surplus after the mortgage was paid.   Upon the language of the Per Curiam opinion affirming the distribution of the court below, it appears that was the only question.   But however that may be we laid down a different rule in Thomas's Appeal, supra, and followed it in the still later case of Huffort's App., 10 W. N. 528, in which there was only the implied waiver arising from a mortgage, but the fund was distributed by the court below to the liens in the order of their priority and we affirmed the distribution.   The manifest evils which would necessarily arise if the rule of distribution contended for by the appellee should be allowed, are so grave that we are altogether unwilling to adopt such a doctrine.   We therefore follow the current of the authorities and what seems to us the better reasoning of Bowyer's Appeal, Shelly's Appeal, Thomas's Appeal and Huffort's Appeal and award the fund to the liens in the order of their priority.

> The decree of the court below is reversed with direction to distribute the fund in accordance with this opinion, at the cost of the appellee.