## Penn Mutual Life Insurance Company *v.* Finkel (et al., Appellant).

12

Argued April 27, 1967. Before BELL, C. J., MUS-MANNO, JONES, EAGEN, O'BRIEN and ROBERTS, JJ.

reargument refused December 27, 1967.

*Edward Stone,* with him *A. Samuel Buchman,* for appellant.

*Gerald Gornish,* with him *M. Melvin Shralow,* and *Goodis, Greenfield, Narin & Mann,* for appellant.

*Joseph R. Ritchie, Jr.,* Assistant United States Attorney, with him *Drew J. T. O'Keefe,* United States Attorney, for United States of America, appellant.

*Morris C. Solomon,* with him *Solomon, Tolson & Resnick,* for appellee.

OPINION BY MR. JUSTICE EAGEN, November 14, 1967:

This case involves three appeals from an order of the Court of Common Pleas of Philadelphia County allocating the proceeds of a sale in a mortgage foreclosure action. The foreclosure was instituted by the Penn Mutual Life Insurance Company, holder of a mortgage given by Louis Finkel, record owner of the property. In dispute is the allocation of that portion of the proceeds of sale in excess of the mortgage debt, foreclosure costs and local property taxes due.

Herman Werner filed a petition for distribution in the court below in which he claimed one-sixth of the fund involved on the ground that he had contributed one-sixth of the purchase price of the property, thereby becoming the equitable owner of one-sixth of the property recorded in Finkel's name. To this petition, separate answers were filed by three parties claiming a right to the fund or participation therein.

The United States of America (U. S.) asserted a right to the entire fund in payment of liens dating from 1952 for income taxes owed by Finkel; Westinghouse Electric Corporation (Westinghouse) sought payment of a lien against the property in the amount of $13,966.56, based on a judgment entered against Finkel in April 1959 by authority of a confession of judgment in a note; Joseph H. Resnick, Esq., asserted a claim for legal services rendered the two owners, Finkel and Werner, from 1953 to 1960 as an equitable charging lien against the fund, and as a judgment lien entered against Finkel by confession in April of 1960.

Depositions were taken inquiring into the basis of Werner's interest as part owner of the property and the knowledge of U. S. of this interest. Counsel for the contending claimants also filed a stipulation agreeing to certain pertinent facts. Argument before the court followed on the pleadings and record thus established.

The court below found Werner's asserted one-sixth ownership in the property to be authentic and valid and U. S. to have had knowledge thereof. These conclusions are not challenged here. The court then ruled: (1) that Attorney Resnick's services entitled him to a first lien against the fund in the amount of $7,500, in the nature of an equitable charge, i.e., a "charging lien"; (2) that U. S. was entitled to five-sixths of the balance remaining after payment of Resnick's lien; and (3) that Werner was entitled to one-sixth of this balance.

Westinghouse appealed, contending that the court erred in refusing to include its claim in the award dis-

tribution, and in holding that Attorney Resnick had a lien against the fund which took precedence over its claim. Werner and U. S. appealed, challenging the correctness of the court's ruling that Resnick had a charging lien upon the fund.

We rule that the court erred (1) in awarding Attorney Resnick a charging lien upon the fund; and, (2) in excluding the claim of Westinghouse in the award of distribution on the present record.

If Westinghouse were without notice when it filed its lien of Werner's equitable interest in the property, then its judgment binds the interest of Werner under the provisions of the Act of June 4, 1901, P. L. 425, 21 P.S. §601. In its brief Westinghouse asserts that its lack of notice is undisputed and is recognized in the lower court's opinion. We find no such recognition in the opinion and will remand for the limited purpose of permitting the court below to specifically resolve this factual question.

Section 1 of the Act of 1901, 21 P.S. §601, supra, provides: "Whenever hereafter a resulting trust shall arise with respect to real property, by reason of the payment of the purchase money by one person, and the taking or making of a legal title in the name of another, if the person advancing the purchase money has the capacity to contract, such resulting trusts shall be void and of none [sic] effect as to bona fide judgment or other creditors, or mortgagees of the holder of the legal title, or purchasers from such holder without notice unless either (1) a declaration of trust in writing has been executed and acknowledged by the holder of the legal title, and recorded in the recorder's office of the county where the land is situated, or (2) unless an action of ejectment has been begun, in the proper county, by the person advancing the money against the holder of the legal title."

The lower court, citing *Rochester Trust Co. v. White*, 243 Pa. 469, 90 A. 127 (1914) for the proposi-

tion that the above section of the Act of 1901 is intended to protect the expectations of those who lend money on a judgment taken in reliance on the borrower's legal title to land, noted that Westinghouse should have been aware that its judgment was worthless because of the existence of prior federal tax liens and reasoned that Westinghouse therefore could not have relied on the record title when it filed its judgment and, consequently, could not claim the protection of the statute even if Westinghouse were a judgment creditor without notice of the unrecorded resulting trust.

It seems clear, however, that although Westinghouse did not rely on the record title for a certain recovery, it did rely on Finkel's ownership for the possibility of a recovery. Section 1 of the Act of 1901, supra, is not limited to the protection of holders of judgment notes who appraise the value of the debtor's real property, estimate his equity in it and then file a judgment which is solid security for a loan. The protection of the statute extends generally to judgment and other lien creditors, many of whom file their judgments mechanically, without relying on anything other than an undefined hope of somehow, someday realizing something thereon. For instance, Westinghouse might have hoped for a compromise of the federal tax liens (which, in fact, very nearly occurred) or for an increase in the value of the property. However speculative the value of such hopes, they do prevent the judgment from being worthless. Since whatever speculative value such a judgment has, no less than the sure value of a banker's judgment note, depends on title being in the record owner, the reason for the application of the statute is present.[1]

---

[1] Westinghouse offers the record of another court proceeding, submitting that it may be the subject of our judicial notice, which indicates that the guarantee out of which Finkel's debt to the Cor-

16

Werner contends that even if the Act of 1901, supra, is construed to protect the claim of Westinghouse, the Pennsylvania rule on circuity of liens precludes Westinghouse from reaching Werner's share, because this would place Westinghouse ahead of a claimant admittedly senior to it, namely, U. S. If this were truly a situation where the circuity of liens rule applies, this position would be correct. *Miller's Appeal*, 122 Pa. 95, 15 A. 672 (1888); *Wilcocks v. Waln*, 10 S. & R. 380 (1824); *Dowling v. Vallett*, 70 Pa. Superior Ct. 481 (1918). For a critique and discussion of the rule, see Gilmore, Circular Priority Systems, 71 Yale L. J. 53, 57 (1961). In this case, however, Werner, U. S. and Westinghouse are not successive lienholders contending for the proceeds of a property. Werner does not have a lien. He has an equitable estate, an ownership interest. An estate and a lien are not the same. *Day v. Ostergard*, 146 Pa. Superior Ct. 27, 21 A. 2d 586 (1941). "A person cannot own an article and at the same time have a lien upon it." *Atlantic Finance Corp. v. Kester*, 156 Pa. Superior Ct. 128, 136, 39 A. 2d 740, 744 (1944). U. S., by virtue of the Internal Revenue Code of 1939, §3670, has a lien, but only against

poration arose pre-dated the federal tax liens, thus raising the possibility that Westinghouse relied on Finkel's ostensible ownership in accepting his guarantee. Contrary to the suggestion which several lower courts have found in *Rochester Trust Co. v. White*, supra, this Court has consistently held that creditors relying on record ownership are not protected by the Act of 1901 even if the debt creating transaction occurs when the resulting trust is unrecorded unless they also become judgment or lien creditors while there still is an unrecorded resulting trust. *Ehnes v. Yowell*, 374 Pa. 17, 97 A. 2d 56 (1953); *Malamed v. Sedelsky*, 367 Pa. 353, 80 A. 2d 853 (1951); *Burns v. Coyne*, 294 Pa. 512, 144 A. 667 (1928). In view of our position in these cases, it would be incongruous for reliance on record ownership in the debt-creating transaction to be required as an additional element necessary for recovery under the statute where there is reliance on record ownership when the judgment is entered. Thus, Westinghouse's offer is unnecessary.

property belonging to the delinquent taxpayer. The government does not assert a lien against property ostensibly belonging to the taxpayer but actually belonging to another.[2] *U. S. v. Johnson,* 200 F. Supp. 589 (D. Ariz. 1961) ; *Hobson v. U. S.,* 168 F. Supp. 117 (E.D. Mich. 1958). Westinghouse does assert a lien against Werner's ownership, but Werner and Westinghouse are not rival lienholders. Westinghouse concedes Werner's ownership. No one has any lien or claim attaching to Werner's property interest except Westinghouse. Thus, if Westinghouse became a judgment creditor without notice of Werner's unrecorded resulting trust, it is entitled to be paid from Werner's share.

As to the right of an attorney to a charging lien upon a fund, we stated in *Recht v. Clairton Urban Redevelopment Authority,* 402 Pa. 599, 608, 168 A. 2d 134, 138-39 (1961) : ". . . [B]efore a charging lien will be recognized and applied, it must appear (1) that there is a fund in court or otherwise applicable for distribution on equitable principles, (2) that the services of the attorney operated substantially or primarily to secure the fund out of which he seeks to be paid, (3) that it was agreed that counsel look to the fund rather than [to] the client for his compensation, (4) that the lien claimed is limited to costs, fees or other disbursements incurred in the litigation by which the fund was raised and (5) that there are equitable considerations which necessitate the recognition and application of the charging lien."

In this case Attorney Resnick's services were directed towards preventing foreclosure of the property.

---

[2] Thus the government does not claim the additional protection that might be provided by 21 P.S. §601 and so there is no reason to decide whether the tax collector had notice of Werner's unrecorded interest or whether he is a "creditor" within the meaning of the statute.

The lower court found there was no agreement that he should look to the fund involved for payment of his services, and pertinently stated, "It is inconceivable that there would have been an agreement to look to the 'fund' for payment since no fund was contemplated." However, citing *Turtle Creek Bk. & Trust Co. v. Murdock,* 150 Pa. Superior Ct. 277, 28 A. 2d 320 (1942) for the proposition that an agreement to look to land for payment is equivalent to an agreement to look to the proceeds of the sale thereof, the court reasoned that since the record owner of the property had given Resnick a judgment note in 1959, it could be inferred that an agreement existed that Resnick should look to the land for payment.

Assuming for the sake of argument that the *Turtle Creek* proposition properly applies to this case, the inference that there was an agreement to look to the land for payment is completely unsupported. In *Turtle Creek* that inference was solidly based on an express agreement that the attorney's fee was to be contingent on his establishing the client's title to the real estate and on the fact that the client was insolvent when the attorney took the case. Neither of these elements appear in the present case. The fact that the attorney's services were rendered from 1953 to 1960 and that the judgment note was not given until 1959 indicates, in exact opposition to the lower court's use of this fact, that the services were not rendered with an intent to look to the property for payment. Moreover, Attorney Resnick's own pleading alleges that the note was given "as *security* for *partial* payment of his fees." (Emphasis added.) This itself clearly indicates that the clients were to be personally liable for the fees and that the note was given as security for the personal debt.

With reference to the requirement that the services of the attorney operate to "secure" the fund out of

which he seeks to be paid, the lower court ruled that the attorney's services need not create the fund but may simply protect it, quoting from *Harris's Appeal,* 323 Pa. 124, 131, 186 A. 92, 95-6 (1936) : "Counsel for a trustee is entitled to be paid out of the corpus of the estate, and likewise an attorney for a beneficiary who succeeds in establishing the right of the estate to a fund or specific property, *or in protecting the trust res."* (Emphasis added.)

The thought that services used merely in protecting a trust res should be payable from the fund appears to be derived from *Trustees v. Greenough,* 105 U.S. 527 (1881) which reasoned that all trust beneficiaries benefit from the prevention of the waste of trust assets and therefore all should bear its cost. It cannot be maintained realistically that U. S., Werner and Westinghouse were benefited by Attorney Resnick's services unless they established either Werner's or Finkel's right to the property or unless they increased the size of the fund before the court by delaying foreclosure.

Attorney Resnick's services from 1953-1960 did not establish either Finkel's or Werner's right to the property. Finkel, of course, was the record owner from 1945. Werner's one-sixth interest was established, apparently against vigorous opposition from U. S., by his attorney in the present case.

Attorney Resnick's services in delaying foreclosure did not have an established relation to any increase in the size of the fund. Since he represented his clients only from 1953-1960, it is improper to measure the property's appreciation from 1945-1960 as a contribution of the delayed foreclosure. For all we know, the appreciation may have occurred entirely before 1953. Similarly, the decline in the balance of the mortgage debt did not have an established relation to the size of the fund because it may very well have been counter-balanced by a depreciation in the market value of the

industrial property involved. There simply is nothing in the record to show that the size of the fund distributable to these creditors is larger because of Attorney Resnick's services in resisting their claims.

With reference to the requirement that the attorney's services be rendered in the litigation by which the fund was raised, it seems clear that Attorney Resnick's claim—based on his efforts in a string of proceedings before various state and local taxing authorities, his negotiations with various supply and equipment creditors, and his litigation with Penn Mutual, Westinghouse and U. S.—does not qualify.

No doubt Attorney Resnick is entitled to be paid for his services. But his services are not so related to the fund before the court that other creditors of his clients should in equity bear the expense. His proper remedy is an action against Finkel or Werner for their personal debt.

The order of the court below is vacated and the record is remanded for further action consonant with this opinion.

Mr. Justice COHEN took no part in the consideration or decision of this case.