## Powell Estate

*Ashby M. Larmore,* for accountants.

*George J. Brutscher, Lawrence E. Wood, Thomas E. Wood, Thomas M. Twardowski,* and *William L. McLaughlin,* for creditors.

MacELREE, P. J., February 4, 1969.—Objections to the account were filed in due course, November 4, 1968, on behalf of Hercules Avello, et al., incorporated herein by reference thereto, the substance of them being that as to the lien of a certain judgment in favor of decedent, "a person may not have a lien against his own property . . ."

In the year 1964, decedent, together with her son Lewis G. Powell, now deceased, were partners trading as C. L. Powell and Son.

On or about October 1, 1964, decedent loaned the sum of $9,000 to the partnership and took a judgment note in that amount executed by Lewis G. Powell and Grace C. Powell, trading as C. L. Powell and Son, and by Lewis G. Powell and Grace C. Powell, individuals.

Said note was duly recorded in the office of the Prothonotary of Chester County, Pa., on December 9, 1964.

Subsequent thereto, the aforesaid partnership was dissolved and its net assets distributed among creditors other than the said decedent.

Counsel for the accountants suggests that the effect of entering this note was to create a lien against the real estate of each partner: Klein on Judgments by Confession, p. 26, and Schuchman on Judgment Notes, sec. 18.1-18.4.

He further suggests that the entry of the note would create a lien and there would have to be an action to strike or open such a judgment in order to render it invalid or ineffective.

He concedes that there is no question about the fact that one cannot defraud his creditors by entering a judgment against himself, but that no such fraud is alleged in the subject estate, in that the note represents a legitimate debt and that decedent does not in any way benefit from having it considered a first lien against the proceeds of the real estate, inasmuch as the only consequence here is if it be considered a valid lien the common creditors would benefit at the expense of the lien creditors who are near the bottom of the lien list.

Counsel for the junior lien creditor, L. L. Logan, who would be relegated to the status of a common creditor if the lien of decedent is sustained, has filed an exhaustive brief in support of the objections.

He first raises the question as to whether decedent's judgment constitutes a valid lien on decedent's own realty.

Counsel for Logan suggests that although the Powell judgment is a valid lien against partnership property and any real estate of her son and co-partner, it never became a lien against her own realty, contending that a basic concept of real property law is the doctrine of extinguishment of liens by merger and stands for a fundamental proposition that a person cannot simultaneously have an estate in land and hold a lien against that same land, contending that the accountants' position that

decedent's judgment of $9,000 attached a lien to her individual real estate is a legal impossibility.

In support of this contention he cites Eshleman v. Woerner, 17 D. & C. 2d 227, wherein exceptions were filed to a sheriff's schedule of distribution of proceeds realized from the sale of debtor's real estate, and in which one of the judgment creditors purchased from the debtor a parcel of ground on which the creditor held two liens.

The Lancaster County Court held that the judgment creditors' liens were extinguished by merger when he became the owner of the property against which his liens attached, citing 6A Standard Pa. Pract., §426, for the rule that "a judgment or execution lien is extinguished by operation of law where the judgment creditor becomes the owner of the land upon which his judgment is a lien."

Counsel further contends that the Eshleman decision approved and followed the reasoning used in the very old case of Koons v. Hartman, 7 Watts 20, being the case in which a judgment creditor acquired from a judgment debtor certain land and subsequently made a conveyance of it.

The court remarked, at pages 24 and 25 of its opinion,

"And, indeed, having become the absolute owner of the land, and being so also of the judgment, at the same time, it is not very easy to conceive why the lien should have continued to exist longer: because it would be idle, if not perfectly absurd and ridiculous for a creditor to wish that his own property should be bound for the payment of a debt owing to himself; it is even difficult, if not impossible, to conceive how this could be."

Counsel further contends that the subject estate raises a question involving the merger doctrine in reverse in that decedent, Grace C. Powell, owned

her real estate in fee prior to the time the $9,000 judgment note was recorded, and further contends that applying the rationale underlying the merger rule to these facts results in an inescapable conclusion that the Powell judgment never became a lien against decedent's own property, arguing that if decedent had held a judgment lien on another's land and subsequently purchased that land, her lien clearly would have been extinguished by merger; and that here, since she owned the land first, it was simply impossible to encumber that same property in her favor through the device of filing a judgment note of record.

It is also suggested by counsel for Logan that the suggestion of counsel for the accountants, to the effect that decedent could, at the same time, have an estate in land and a lien on that same land is self-contradictory in that an estate in land is defined as the right to possession and enjoyment of it, while a lien on land is the right to have it sold or otherwise applied in satisfaction of a debt.

And, furthermore, that a lien is defined as a right to enforce a charge upon a property of another for payment or satisfaction of debt or claim: Day v. Ostergard, 146 Pa. Superior Ct. 27.

Counsel for Logan also poses the second question as to whether decedent's judgment, if adjudged a valid lien, takes priority over the remaining lien creditors.

It is, we think, correctly stated that decedent's $9,000 judgment, the Logan judgment, and several other unpaid judgments all represent obligations of the former partnership, C. L. Powell and Son, of which decedent was a partner.

Counsel cites section 102 of the Uniform Partnership Act of March 26, 1915, P. L. 18, 59 PS §102, which provides that liabilities owing to partners shall rank

below liabilities owing to creditors other than partners, when examining partnership debts and priorities.

He further contends that the intent of the legislature to have partnership creditors satisfied before partners themselves can be given full effect in the subject estate without conflicting either with section 622 of the Fiduciaries Act of April 18, 1949, P. L. 512, respecting the order of payment of claims, or with section 611 which leaves judgment liens unaffected.

He argues that a conflict does arise between section 102 of the Uniform Partnership Act, supra, and section 602 of the Lien Priority Law of June 28, 1951, P. L. 927, in that decedent's judgment is first in time. Such a conflict, he argues, should be resolved in favor of all lien creditors of the partnership other than decedent, with the effect that decedent's judgment, if honored at all, will be placed at the bottom of the lien creditor list for satisfaction.

Counsel for Logan concedes that the $9,000 note represents a perfectly legitimate loan from decedent to the partnership; and that, unfortunately for decedent, she was unable to recover her investment either from the partnership upon its dissolution or from her son, now deceased, or his estate; and that once these two sources were exhausted, Grace C. Powell was left with a worthless judgment which cannot now be used to the detriment of preferred lien creditors to whom the legislature has afforded a higher protection.

The law in Pennsylvania seems to be clear to the effect that "a person cannot own an article and at the same time have a lien on it," as stated by the late Judge Keller in Atlantic Finance Corporation v. Kester, 156 Pa. Superior Ct. 128, 136, and cited with approval as recently as Penn Mutual Life Insurance Company v. Finkel, 428 Pa. 11, 16.

This being unquestionably the law as to personalty, we believe it to be applicable to real estate as well. Relying upon it, we conclude as to the first question submitted for determination by this court that the judgment of Grace C. Powell against Lewis G. Powell and Grace C. Powell, copartners trading as C. L. Powell and Son, entered of record on December 12, 1964, in the amount of $9,000, together with interest thereon, is not a first lien against the real estate of decedent, and further, we conclude that the effect thereof, if such a judgment were considered to be a valid lien, would be to inequitably advance the status of the common creditors at the expense of junior lien creditors. . . .